1  CHRISTOPHER DARDEN, Bar No. 094959
   DARDEN LAW GROUP, APC
2  11500 W. Olympic Boulevard
   Suite 400
3  Los Angeles, California 90064
   Telephone: (310) 654-3369
4  Facsimile: (310) 568-1806
   Email: Christopherdardenlaw@gmail.com
5

6  LUDLOW B. CREARY II (Bar No. 193793)
   The Law Offices of Ludlow B. Creary II
7  555 W. 5th Street, Floor 35
   Los Angeles, California 90013
8  Telephone: (323) 305-4849
   Facsimile: (323) 430-8788
9  Email: Lbc2@LbcLawexperts.com

10

11 Attorneys for Defendant
   Edward Buck

12                       UNITED STATES DISTRICT COURT

13                       CENTRAL DISTRICT OF CALIFORNIA

14

15

16 UNITED STATES OF AMERICA,          Case No. 2:19-cr-00595-CAS-1

                        Plaintiff,    DEFENDANT EDWARD BUCK'S
17                                    MOTION IN LIMINE #1 TO
        v.                            PRECLUDE EVIDENCE OF
18                                    GEMMEL MOORE'S PRIOR OUT OF
   EDWARD BUCK,                       COURT STATEMENTS MADE TO
19                                    HIS MOTHER LATISHA NIXON

20                      Defendant.

21

22      Defendant, by and through his attorney of record, Christopher A. Darden,

23 hereby moves this Honorable Court to exclude statements Gemmel Moore, the

24 alleged victim in Count 1 of the First Superseding indictment, made to his mother,

25 Latisha Nixon, because these statements are not relevant and because the

26

27

28

statements are inadmissible hearsay. Ms. Nixon told Sheriff's detectives about the statements on August 21, 2017.

This motion is based upon the attached Memorandum of Points and Authorities, declaration of counsel, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,

DATED: November 20, 2020

                               DARDENLAWGROUP, APC.

                        By: *Christopher A. Darden*
                                Christopher A. Darden, Esq.
                                Attorneys for Defendant

## STATEMENT OF FACTS

Defendant Edward Buck is charged in the First Superseding Indictment with nine violations of federal criminal statutes.

Count 1 alleges that on July 27, 2017, Mr. Buck distributed methamphetamine to Gemmel Moore whose death and serious bodily injury resulted from the use of such substance, in violation of 21 U.SC. sec. 841(a)(1), (b) (1) (c ).

Count 2 of the First Superseding Indictment alleges that on January 7, 2019, Mr. Buck distributed methamphetamine to Timothy Dean whose death and serious bodily injury resulted from the use of such substance in violation of section 21 U.SC. sec. 841(a)(1), (b) (1) (c ).

Count 3 of the First Superseding Indictment alleges that on May 15, 2018, Mr. Buck distributed methamphetamine at his residence to C.S., in violation of section 21 U.SC. sec. 841(a)(1), (b) (1) (c ).

Count 4 of the First Superseding Indictment alleges that on September 22, 2018, Mr. Buck distributed methamphetamine to J.G., in violation of section 21 U.SC. sec. 841(a)(1), (b) (1) (c ).

Count 5 of the First Superseding Indictment alleges that on December 2, 2018, Mr. Buck distributed methamphetamine to C.H., in violation of section 21 U.SC. sec. 841(a)(1), (b) (1) (c).

Count 6 of the First Superseding Indictment alleges that on September 4, 2019, while at his residence Mr. Buck distributed methamphetamine to D.B. in violation of section 21 U.SC. sec. 841(a)(1), (b) (1) (c ).

Count 7 of the First Superseding Indictment alleges that between January 2011 and September 17, 2019 Mr. Buck rented a residence and used and maintained a place for the purpose of distributing and using and distributing GHB, methamphetamine and clonazepam in violation section 21 U.SC. sec. 856(a)(1).

Count 8 of the First Superseding Indictment alleges that on July 27, 2017, Mr. Buck persuaded, induced, and enticed Gemmel Moore to travel in interstate commerce to Los Angeles to engage in prostitution in violation of section 18 U.SC. sec. 2422(a).

Count 9 of the First Superseding Indictment alleges that on September 22, 2018, Mr. Buck persuaded, induced, and enticed Gemmel Moore to travel in interstate commerce to Los Angeles to engage in prostitution in violation of section 18 U.SC. sec. 2422(a).

In an interview conducted with Mr. Moore's mother, Latasha Nixon, was interviewed by Los Angeles County Homicide detectives on August 21, 2017. In the interview Ms. Nixon told police the following:

1. In 2016, Mr. Moore called her and told her a rich and powerful male named Ed Buck held him against his will at Buck's home. He said Buck shot him up with drugs and his arms were red and swollen.

2. Ms. Nixon stated Mr. Moore sent her pictures of his arms, but she no longer had them.

3. Ms. Nixon told detectives she told Mr. Moore to file a police report and go to the hospital but that there was no record of Mr. Moore having made a police report and she did not know if he went to a hospital.

4. In March 2017 Mr. Moore called Ms. Nixon and told her "he had been in the streets and friends were using methamphetamine. He said if he did not come home to her, he was going to die.

5. Mr. Moore returned to Texas in April or May 2017. Ms. Nixon picked up Moore from the airport. Mr. Moore suffered seizures and body tremors.

6. Ms. Nixon told detectives Mr. Moore told her that he went to Mr. Buck's home off and on and that Mr. Buck injected him with methamphetamine which was Mr. Buck's preference.

7. Ms. Nixon told detectives that Mr. Moore told her Mr. Buck once paid

him $2000.00 and that Mr. Buck would also ingest methamphetamine with him.

8. Ms. Nixon told detectives Mr. Moore told her Mr. Buck had a fetish for young black men.

## II. ARGUMENT

1. In 2016, Mr. Moore called His mother, Latisha Nixon, and told her a rich and powerful male named Ed Buck held him against his will at Buck's home. He said Buck shot him up with drugs and his arms were red and swollen.

Mr. Buck objects to the introduction of this statement on hearsay grounds. Hearsay is not admissible in federally criminal trials except as provided by these rules . . . ." (F.R.E. sec. 802.) Hearsay is an out of court statement offered at trial for the truth of the matter stated or asserted. Here, Ms. Nixon states Mr. Moore told her Mr. Buck held him against his will. Here, the only purpose in offering such a statement is to assert that Mr. Moore was held captive. Therefore, the statement is hearsay and inadmissible.

The statement should also be excluded because it lacks trustworthiness. There is no other evidence Mr. Moore was held against his will. In fact, Mr. Moore's mother told police that Moore told her he would "come and go" from Mr. Buck's apartment whenever he felt like it.

Ms. Nixon's assertion that Mr. Moore told her that Mr. Buck "shot him up with drugs" is also hearsay and inadmissible.

2. Ms. Nixon stated Mr. Moore sent her pictures of his arms, but she no longer had them.

Mr. Buck objects on foundational grounds. While Ms. Nixon, Mr. Moore's mother, claims Mr. Moore sent her photos of his swollen arms, these alleged photographs are long gone. Ms. Nixon told police she no longer had the photographs. Whether the photos actually depicted Mr. Moore's arms or, even if they did depict Mr. Moore's arms, there is no evidence from which to determine

whether Mr. Moore's arms were swollen.

Mr. Buck also objects because he has had no access to these photographs and thus, is in no position to refute Mr. Moore's claims. To admit this statement about a condition and a photograph, which is without any independent corroboration and which nobody else has seen is fundamentally unfair to Mr. Buck.

Finally, Mr. Buck asks the court to consider that Ms. Nixon is biased against Mr. Buck. Not because she is Mr. Moore's mother but because she has filed a wrongful death suit against Mr. Buck in this very courthouse.

3. Ms. Nixon told detectives she told Mr. Moore to file a police report and go to the hospital but that there was no record of Mr. Moore having made a police report and she did not know if he went to a hospital.

4. In March 2017 Mr. Moore called Ms. Nixon and told her "he had been in the streets and friends were using methamphetamine. He said if he did not come home to her, he was going to die." Mr. Buck objects to this statement because it is inadmissible hearsay.

5. Mr. Moore returned to Texas in April or May 2017. Ms. Nixon picked up Moore from the airport. Mr. Moore suffered seizures and body tremors. Mr. Buck objects to this statement on the grounds of relevancy. F.R.E. section 401 states that "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than probable than it would be without the evidence." Relevant evidence may be admissible. Irrelevant evidence is inadmissible. (F.R.E. 402.) F.R.E section 403 further states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following; unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence.

6. Ms. Nixon told detectives Mr. Moore told her he went to Mr. Buck's home

off and on and that Mr. Buck injected him with methamphetamine which was Mr. Buck's preference.

7. Ms. Nixon told detectives that Mr. Moore told her Mr. Buck once paid him $2000.00 and that Mr. Buck would also ingest methamphetamine with him. Mr. Buck objects on both hearsay and relevancy grounds. This entire statement is inadmissible hearsay. That Mr. Buck allegedly paid Mr. Moore $2000 on some occasion is not only not true, but it is also irrelevant. The government wants to present Mr. Buck as a rich man who preyed on poor helpless men. Mr. Buck's alleged wealth has nothing to do with these proceedings and will only serve to unduly prejudice the jury against Mr. Buck.

8. Ms. Nixon told detectives that Mr. Moore told her Mr. Buck had a fetish for young black men.

Mr. Buck objects to this statement because a) it lacks foundation. How does Mr. Moore know that Mr. Buck has a fetish for black men? Just because Mr. Buck and Mr. Moore dated does not constitute a fetish. And even if Mr. Buck dated other black men that does not constitute a fetish; b) The statement is vague and likely to waste the court's time. What is a fetish? How is the term fetish defined? The term "fetish" has a negative connotation and suggests the person that allegedly has a "fetish" is a sexual deviant or perverted. Who amongst these witnesses is qualified to testify that Mr. Buck has a fetish at all? For example, just because one man prefers blondes or one woman prefers men over 6'0" tall does not mean either man or woman in our example has a fetish for blondes or tall men; c) this statement is inadmissible hearsay.

## III. CONCLUSION

Based on the foregoing, we respectfully request the court preclude the government from introducing the statements Ms. Nixon claims her son Gemmel Moore made to her during the months preceding his death.

DATED: November 20, 2020

              DARDENLAWGROUP, APC.

              *Christopher A. Darden*

          By:_____
            CHRISTOPHER A. DARDEN, ESQ.

### CERTIFICATE OF SERVICE

Case No 2:19-cr-00595-CAS-1

**Case Name: USA v. Edward Buck**

  I hereby certify that on November 20, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1   I certify that all participants in the case are registered CM/ECF users and that service will
2   be accomplished by the CM/ECF system.
3   I declare under penalty of perjury under the laws of the State of California the foregoing
4   is true and correct and that this declaration was executed on November 20, 2020, at Los Angeles,
5   California.

| K. Martin | /s/ |
|---|---|
| _____ | _____ |
| Declarant | K. Martin |