```
TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
CHELSEA NORELL (Cal. Bar No. 280831)
LINDSAY M. BAILEY (Cal. Bar No. 285047)
Assistant United States Attorneys
Violent and Organized Crime/International
Narcotics, Money Laundering, and Racketeering
Sections
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2624/6875
     Facsimile: (213) 894-0141
     E-mail:    chelsea.norell@usdoj.gov
                lindsay.bailey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 19-00595-CAS |
|---|---|
| Plaintiff, | STIPULATION REGARDING REQUEST FOR (1) CONTINUANCE OF TRIAL DATE AND (2) FINDINGS OF EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT |
| v. | |
| EDWARD BUCK, | |
| Defendant. | **CURRENT TRIAL DATE:** 04/20/21<br>**PROPOSED TRIAL DATE:** 07/13/21 |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Chelsea Norell and Lindsay M. Bailey, and defendant Edward Buck ("defendant"), both individually and by and through his counsel of record, Christopher Darden, Esq., and Ludlow B. Creary, Esq., hereby stipulate as follows:

1. A criminal complaint was filed in this case on September 18, 2019. Defendant first appeared before a judicial officer of the court in which the charges in this case were pending on September 19, 2019. An indictment was filed on October 2, 2019. The post-indictment arraignment was held on October 10, 2019. A First Superseding Indictment ("FSI") was filed on August 4, 2020. The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before December 11, 2019.

2. On October 10, 2019, the Court set a trial date of November 26, 2019, at 9:30 a.m., and a status conference/motions hearing on November 4, 2019, at 1:30 p.m.

3. The Court has previously continued the trial date in this case from November 26, 2019 to August 4, 2020, from August 4, 2020, to January 19, 2021, and again from January 19, 2021, to April 20, 2021, and found the interim periods to be excluded in computing the time within which the trial must commence, pursuant to the Speedy Trial Act.

4. Defendant is detained pending trial. The parties estimate that the trial in this matter will last approximately ten days.

5. By this stipulation, defendant moves to continue the trial date to July 13, 2021, at 9:30 a.m., and the final status conference to July 6, 2021, at 1:30 p.m.. This is the fourth request for a continuance.

6. Defendant requests the continuance based upon the following facts, which the parties believe demonstrate good cause to support the appropriate findings under the Speedy Trial Act:

   a. Defendant is charged with two violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Methamphetamine Resulting in

Death; four violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Methamphetamine; one violation of 21 U.S.C. § 856(a)(1): Maintaining a Drug Premises; and two violations of 18 U.S.C. § 2422(a): Inducing Interstate Travel for Prostitution.  The government has produced over 17,000 items of discovery to the defense, including law enforcement reports, digital device data, photographs, laboratory reports, medical records, etc., which overall exceeds three terabytes of data.

      b.   Due to the nature of the prosecution, including the charges in the FSI and the voluminous discovery involved in the case, this case is so unusual and so complex that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the Speedy Trial Act time limits.

      c.   Defense counsel Christopher Darden, Esq., and Ludlow B. Creary, Esq. have substantive conflicts between now and July 13, 2021, including a conflict the week of July 5, 2021.  Accordingly, counsel represents that they will not have the time that they believe is necessary to prepare to try this case on the current trial date.

      d.   In light of the foregoing, counsel for defendant also represents that additional time is necessary to confer with defendant, conduct and complete an independent investigation of the case, conduct and complete additional legal research including for potential pre-trial motions, review the discovery and potential evidence in the case, and prepare for trial in the event that a pretrial resolution does not occur.  Defense counsel represents that failure to grant the continuance would deny them reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

   e. Defendant believes that failure to grant the continuance will deny him continuity of counsel and adequate representation.

 7. Defendant also requests the continuance based upon the following facts related to the COVID-19 pandemic, which the parties also believe demonstrate good cause to support the appropriate findings under the Speedy Trial Act:

   a. On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials. C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020). That suspension remains in place "[u]ntil further notice." C.D. Cal. Notice from the Clerk, "Amended Expiration of Continuity of Operations Plan," http://www.cacd.uscourts.gov/news/amended-expiration-continuity-operations-plan (Feb. 2, 2021) ("COOP Expiration Notice").

   b. Also on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities. C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (Mar. 13, 2020). On March 19, 2020, by Order of the Chief Judge, the Court implemented its Continuity of Operations Plan ("COOP"), closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions. C.D. Cal. Order of the Chief Judge No. 20-042 (Mar. 19, 2020). On March 29 and 31, recognizing COVID-19's continued spread in the community, the Court took further action: implementing video-teleconference and

4

telephonic hearings and suspending all grand-jury proceedings. C.D. Cal. Orders of the Chief Judge Nos. 20-043 (Mar. 29, 2020) and 20-044 (Mar. 31, 2020); see C.D. Cal. Order of the Chief Judge No. 20-186 (December 17, 2020) ("extend[ing] all findings and authorizations in Order of the Chief Judge No. 20-043 for an additional 90 days unless earlier terminated").

        c.    On August 6 and September 14, 2020, the Court slightly relaxed its restrictions to permit in-person criminal hearings for defendants who do not consent to remote appearance and to allow up to 10 members of the public to attend. General Order No. 20-09, at 2-3; C.D. Cal. General Order No. 20-12, In Re: Coronavirus Public Emergency Order Concerning Reopening of the Southern Division, at 2 (Sept. 14, 2020). However, on December 7, 2020, following "an unprecedented surge of COVID-19 cases, hospitalizations, and test positivity rates in the Central District," the Court reinstituted its COOP Plan. Order of the Chief Judge No. 20-179, at 1-2. The COOP Plan suspended all grand jury proceedings and once again closed court facilities to the public except for hearings on certain criminal duty matters. Order of the Chief Judge No. 20-179, at 2-3. On January 6, 2021, the suspension was extended through and including January 29, 2021. Order of the Chief Judge No. 21-002, at 2. The COOP Plan expired on January 29, 2021, and the Court permitted the resumption of certain in-person hearings, but not jury trials, beginning on February 1, 2021. See COOP Expiration Notice.

        d.    The Court's orders were imposed based on (1) the California Governor's declaration of a public-health emergency in response to the spread of COVID-19, as well as (2) the Centers for Disease Control's advice regarding reducing the possibility of

exposure to the virus and slowing the spread of the disease. See, e.g., General Order 20-02, at 1. The Chief Judge has recognized that, during the COVID-19 crisis, gatherings should be limited to no more than 10 people and elderly and other vulnerable people should avoid person-to-person contact. See Order of the Chief Judge No. 20-042, at 1-2. The Court has more broadly recognized CDC guidance advising "precautions to reduce the possibility of exposure to the virus and slow the spread of the disease[.]" General Order 20-09, at 1.

   e. Local and state governments have adopted similar policies. On March 19, 2020, both Los Angeles Mayor Eric Garcetti and California Governor Gavin Newsom issued emergency orders requiring residents to "stay home," subject to limited exceptions. California Executive Order N-33-20 (March 19, 2020); accord Safer at Home, Public Order Under City of Los Angeles Emergency Authority ¶ 1 (March 19, 2020). Subject to similarly limited exceptions, all travel was prohibited. Safer At Home ¶ 4. Non-essential businesses requiring in-person attendance by workers were ordered to cease operations. Id. ¶ 2. All schools in the Los Angeles Unified School District remain closed to in-person classes.

   f. On December 3, 2020, the Acting State Public Health Officer of the State of California issued a Regional Stay at Home Order based on the "unprecedented surge in the level of community spread of COVID-19." California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020). That order went into effect on December 6, 2020 and restricted business and social activities, including by suspending outdoor restaurant operations, in California regions for which ICU bed capacity is less than 15%. As the Chief Judge's

December 7, 2020 Order reactivating the COOP Plan recognized, ICU availability in the Southern California region, which includes the entire Central District, fell below 15% as soon as the Regional Stay at Home Order went into effect. Order of the Chief Judge No. 20-179, at 2. When the COOP Plan was extended on January 6, 2021, ICU availability in the Southern California region was at 0.0%. Order of the Chief Judge 21-002, at 1. Although the Regional Stay at Home Order was lifted on January 25, 2021, ICU availability has increased, and case numbers have declined, COVID-19 remains extremely dangerous, and California counties remain subject to various restrictions, depending on their tier. See "Blueprint for a Safer Economy," https://covid19.ca.gov/safer-economy/ (last visited March 12, 2021).

      g.   The Federal Bureau of Prisons (BOP) has likewise adopted aggressive procedures to protect federal inmates. On April 1, 2020, all BOP facilities nationwide instituted a two-week lock-down, in order to combat the spread of COVID-19 and to protect people in custody. See Federal Bureau of Prisons, COVID-19 Action Plan: Phase Five (Mar. 31, 2020), available at https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. The BOP also updated its quarantine and isolation procedures to require all newly admitted inmates to be quarantined for a minimum of 14 days. Id. It likewise suspended in-person social visitation and restricted inmate movement between facilities. See Federal Bureau of Prisons, Bureau of Prisons Update on COVID-19 (March 24, 2019), available at https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf. Many restrictions remain in place, and the BOP is currently undertaking a nationwide campaign to vaccinate staff and inmates.

   h. As these measures reflect, the coronavirus pandemic is a global emergency that is unprecedented in modern history. As data from both the Centers for Disease Control and the California Department of Public Health reflect, the virus has spread through the United States community at an alarming rate. <u>See</u> Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Coronavirus Disease 2019 (COVID-19), California Department of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx. The death toll, across the world, is staggering.

   i. Based on these facts, the Court's August 2020 order concluded that it was necessary to suspend criminal jury trials until further notice "in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel." General Order 20-09, at 1. Given the increased rates of COVID-19-related hospitalization and death over the 30 days preceding the August 2020 order, the Court found that "holding jury trials substantially increases the chances of transmitting the Coronavirus," and it would thus "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk." <u>Id.</u> at 3. The Court concluded that suspending jury trials thus served the ends of justice and outweighed the interests of the public and defendants in a speedy trial. <u>Id.</u> The Central District of California has not yet devised and adopted protocols for safely conducting jury trials.

  8. The government does not object to the request for a continuance, and the requested continuance is not based on congestion

of the Court's calendar, lack of diligent preparation on the part of the attorney for the government or the defense, or failure on the part of the attorney for the Government to obtain available witnesses.

9. Based on all of the foregoing, for purposes of computing the date under the Speedy Trial Act by which defendant's trial must commence, the parties agree that the time period of April 20, 2021, to July 13, 2021, inclusive, should be excluded pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), (h)(7)(B)(ii) and (h)(7)(B)(iv) because the delay results from a continuance granted by the Court at defendant's request, without government objection, on the basis of the Court's finding that: (i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; (iii) the case is so unusual and so complex, due to the nature of the prosecution and the voluminous discovery, that it is unreasonable to expect preparation for pre-trial proceedings or for the trial itself within the time limits established by the Speedy Trial Act; and (iv) failure to grant the continuance would unreasonably deny defendant continuity of counsel and would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

10. Nothing in this stipulation shall preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods be excluded from the period within which trial must commence.

1  Moreover, the same provisions and/or other provisions of the Speedy
2  Trial Act may in the future authorize the exclusion of additional
3  time periods from the period within which trial must commence.
4     IT IS SO STIPULATED.
5   Dated: March 24, 2021            Respectfully submitted,
6                                    NICOLA T. HANNA
                                     United States Attorney
7
                                     BRANDON D. FOX
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9
10                                   _____
                                     CHELSEA NORELL
11                                   LINDSAY M. BAILEY
                                     Assistant United States Attorneys
12
                                     Attorneys for Plaintiff
13                                   UNITED STATES OF AMERICA
14
15
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

I am Edward Buck's attorney.  I have carefully discussed every part of this stipulation and the continuance of the trial date with my client. I have fully informed my client of his Speedy Trial rights.  To my knowledge, my client understands those rights and agrees to waive them.  I believe that my client's decision to give up the right to be brought to trial earlier than July 13, 2021 is an informed and voluntary one.

    /s/ *via e-mail authorization*        March 23, 2021

CHRISTOPHER DARDEN, ESQ.                  Date
LUDLOW B. CREARY, ESQ.
Attorneys for Defendant
EDWARD BUCK

I have read this stipulation and have carefully discussed it with my attorney.  I understand my Speedy Trial rights.  I voluntarily agree to the continuance of the trial date and give up my right to be brought to trial earlier than July 13, 2021.  I authorize my counsel to sign this stipulation on my behalf.

   /s/ *via e-mail authorization*        March 23, 2021

EDWARD BUCK                                         Date
Defendant