UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CR-00595-CAS-1 | | Date | March 24, 2021 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | Chelsea Norell, Not Present Lindsay Bailey, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| EDWARD BUCK | NOT | X | | CHRISTOPHER DARDEN | NOT | | X |
| | | | | LUDLOW CREARY | NOT | | X |

**Proceedings:**    (IN CHAMBERS) [REDACTED]

THE GOVERNMENT'S MOTIONS *IN LIMINE* (Dkts. 48, 50, filed on November 20, 2020)

DEFENDANT'S MOTIONS *IN LIMINE* (Dkts. 51, 53, 54, 55, 56, 57, 58, 60, 71, filed on November 20, 2020 and December 4, 2020)

## I.    INTRODUCTION AND BACKGROUND

Defendant Edward Buck is charged with six counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts One through Six); one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) (Count Seven); and two counts of coercion or enticement to commit prostitution in violation of 18 U.S.C. § 2422(a) (Counts Eight and Nine). Dkt. 32, First Superseding Indictment ("FSI"). The counts against defendant arise from defendant's alleged solicitation of men to consume drugs, which defendant provided, and to perform sexual acts at defendant's apartment. Id. ¶ 1. Defendant is alleged to have held these so-called "party and play" sessions from at least January 2011, to September 17, 2019. Id. Defendant solicited his victims, some of whom were homeless, using social media platforms and a "recruiter" who solicited victims on defendant's behalf. Id. ¶ 2. During these sessions, defendant allegedly distributed drugs, including methamphetamine, pressured victims into using drugs, and at times injected his victims with methamphetamine, with and without their consent. Id. ¶¶ 2–3. On at least two occasions, defendant distributed lethal quantities of methamphetamine, resulting in the death of his victims, Gemmel Moore and Timothy Dean. Id.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**                    **'O'**

On November 20, 2020, the government filed two motions *in limine*, dkts. 48, 50; and defendant filed eight motions *in limine*, dkts. 51, 53–58, 60.  On December 7, 2020, the government opposed.  Dkts. 73–75, 78, 80.  Defendant filed two oppositions, one on December 7, 2020, dkt. 82, the other on December 8, 2020, dkt. 89.  The government filed two replies on December 14, 2020.  Dkts. 90, 91.  The Court held a hearing on the motions on March 2, 2021.  Pursuant to the Court's request, defendant filed supplemental briefing on March 9, 2021.  Dkt. 120 ("Def. Supp. Brief").[1]

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

"A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area."  United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  "[M]otions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible."  Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. 08-CV-08525-PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010).  The "failure to specify the evidence" that a motion *in limine* "seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion."  Bullard v. Wastequip Mfg. Co. LLC, No. 14-CV-01309-MMM, 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015).

"Trial courts have broad discretion when ruling on motions *in limine*."  Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc., No. 2:16-CV-0084-FMO-AJW, 2017 WL 2929377, at *1 (C.D. Cal. May 14, 2017).  Such rulings are "not binding on the trial judge, and the judge may always change his mind during the course of a trial."  Ohler v. United States, 529 U.S. 753, 758, 120 S. Ct. 1851, 146 L.Ed.2d 826 (2000).  "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."  Matrix Int'l Textile, 2017 WL 2929377, at *1 (citation omitted).

---

[1] The government objects that this brief exceeds the scope permitted by the Court.  Dkt. 121.  (At the hearing, the Court permitted defendant to submit a supplemental brief addressing only the government's first motion *in limine*.)  The Court nevertheless considers certain of the arguments advanced in defendant's supplemental brief, as discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

## III.  DISCUSSION

### A. Government's MIL #1

The government moves *in limine* to exclude a range of arrests and convictions relating to seven witnesses it intends to call.  Dkt. 48 ("Gov't MIL 1") at 1; see dkt. 66, Appendix A to Gov't MIL 1 ("Appendix A").  The objections are based on Federal Rules of Evidence 608 and 609.[2]  Defendant opposes.  Dkt. 82 ("Opp. to Gov't MIL 1").

Impeachment of a witness is governed by Rules 608 and 609.  United States v. Colbert, 116 F.3d 395, 396 (9th Cir. 1997) ("Federal Rules of Evidence 608 and 609 limit a defendant's ability to impeach an adverse witness with his prior criminal record during cross-examination.").  Rule 608 provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Fed. R. Evid. 608(b).  Rule 609, then, provides, in relevant part, (1) that evidence of a felony "must be admitted, subject to Rule 403, … in a criminal case in which the witness is not a defendant," and (2) that evidence of a misdemeanor or a felony "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Evid. 609(a)(1), (2).  However, "if more than 10 years have passed since the witness's conviction or release from confinement, whichever is later," evidence of the conviction "is admissible only if[] its probative value … substantially outweighs its prejudicial effect," and notice is given.  Fed. R. Evid. 609(b).  Admissibility of impeachment evidence depends on context.  United States v. Bonanno, 852 F.2d 434, 439 (9th Cir. 1988) (citing United States v. Feldman, 788 F.2d 544, 554 (9th Cir. 1986)) ("A defendant's constitutional right to confront witnesses through cross-examination is limited to issues relevant to the trial.").



1.  ▇▇▇▇▇▇▇

Witness ▇▇▇▇▇▇ was convicted of:

(1) misdemeanor ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, 2005, and

(2) misdemeanor ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, 2016.

---

[2] Unless otherwise specified, all rules mentioned herein refer to the Federal Rules of Evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

Appendix A at 2.

The government objects that Rule 608 precludes evidence of these convictions because the crimes did not involve an element of dishonesty or false statement, and are thus not admissible pursuant to Rule 609. Defendant does not object. The Court finds that evidence of ██████ misdemeanor convictions is not admissible because these crimes do not involve "some element of misrepresentation or other indicium of a propensity to lie." United States v. Glenn, 667 F.2d 1269, 1273 (9th Cir. 1982); see Garcia v. Cty. of Riverside, No. CV 5:18-00839-SJO (ASx), 2019 WL 4282903, at *9 (C.D. Cal. June 7, 2019) (████████████████ "is not a conviction of a crime that involved a dishonest act or false statement").



Witness ████████████ was convicted of:

(1) misdemeanor ██████████████████, 2009,

(2) misdemeanor ██████████████████, 2012,

(3) misdemeanor ████████████, 2016,

(4) felony ██████████████████, 2015 (the government raises no objection to evidence of this conviction), and

(5) felony ████████████████████, 2016 (no objection).

Appendix A at 2.

The government does not object to the admission of the ████████, 2015 and ██, 2016 convictions described above. However, the government objects that Rule 608 precludes evidence of the misdemeanor convictions (numbers 1 through 3) because the crimes do not involve an element of dishonesty or false statement, and are thus not admissible pursuant to Rule 609. Defendant responds that "the court should allow all misdemeanor convictions … that involve ████████████ into evidence because [] they involve an act of dishonesty." Opp. to Gov't MIL 1 at 4. The Court finds that ████████ conviction for ██████ is inadmissible because it does not involve an indicium of a propensity to lie. See Garcia, 2019 WL 4282903, at *8 (conviction for ████████████████ "do[es] not involve a dishonest act or false statement, and thus would not be admissible for impeachment purposes"). However, the record is inadequate to determine whether the convictions for ████████████████ (numbers 2 and 3) are probative of reliability. Glenn, 667 F.2d at 1273 (██████████████ are not per se crimes of dishonesty); United States v. Gilton, No. 3:13-CR-00764-WHO-1, 2019 WL 7050219, at *3 (N.D. Cal. Dec. 23, 2019) (considering admission of misdemeanor ████████

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

convictions).  Thus, the Court requested oral argument regarding the circumstances surrounding these convictions, and whether they are probative of honesty.  Nonetheless, the parties were unable to provide additional information regarding these convictions.  The Court therefore reserves judgment until the time of trial as to whether ███████ misdemeanor convictions for ██████████████████████████ are admissible.



      3. ███████████

Witness ████████████ was convicted of:

(1) misdemeanor ████████████████████████████████, 2019.

Appendix A at 2.

    The government objects that Rule 608 precludes evidence of this conviction because the crime did not involve an element of dishonesty or false statement, and is thus not admissible pursuant to Rule 609.  Defendant does not object.  The Court finds that evidence of ███████ misdemeanor conviction for ███████████████████████████ is not admissible because this crime does not involve an indicium of a propensity to lie.  See Garcia, 2019 WL 4282903, at *9.

      4. ██████████████

Witness ██████████████ was convicted of:

(1) misdemeanor ████████████████████████, 2008,

(2) misdemeanor ███████████████████████, 2010,

(3) misdemeanor ███████████████████████, 2011,

(4) misdemeanor ████████████████, 2011,

(5) misdemeanor ██████████████████████, 2011,

(6) misdemeanor ███████████████, 2011,

(7) misdemeanor ██████████████████████, 2012,

(8) misdemeanor ███████████████████████, 2013,

(9) misdemeanor ███████████████████████, 2014,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

(10)  misdemeanor ███████████████████, 2014,

(11)  misdemeanor ████████████████████████, 2014,

(12)  misdemeanor ██████████████████, 2016,

(13)  felony ████████████████████, 2009,

(14)  felony ████████████████████, 2009,

(15)  felony ████████████████, 2011 (no objection),

(16)  felony ████████████████, 2013 (no objection),

(17)  felony ████████████████, 2013 (no objection),

(18)  felony ███████████, 2014 (no objection),

(19)  felony ████████████████, 2016 (no objection), and

(20)  felony ██████████, 2017 (no objection).

Appendix A at 3–4.

The government objects that Rule 608 precludes evidence of ████████ misdemeanor convictions (numbers 1 through 12) because the crimes did not involve an element of dishonesty or false statement, and are thus not admissible pursuant to Rule 609.  Convictions 1, 2, 5, 11 and 12 are for misdemeanor ████████████████████.  The Court finds these convictions do not involve an indicium of dishonesty and are thus inadmissible.  See Lopez v. Williams, No. EDCV 17-882 JGB (SPx), 2018 WL 8785416, at *2 (C.D. Cal. Nov. 30, 2018) (finding "Plaintiff's convictions for █████████████████████████████████████ ████████████████████ are misdemeanor convictions which do not involve any allegations of falsity or moral turpitude").  Conviction 3 is for ███████████████████████████.  The Court finds this conviction does not involve an indicium of dishonesty and is thus inadmissible.  See United States v. Colbert, 116 F.3d 395, 396 (9th Cir. 1997) (holding "conviction [] for ███████████████████████ … involved neither dishonesty nor a false statement").  Convictions 4 and 6 are for misdemeanor ██, conviction 9 is for misdemeanor ██████████████, and conviction 10 is for ██.  The Court initially found the record was insufficient to determine whether the convictions for ████████████████████████████████ are probative of reliability.  Glenn, 667 F.2d at 1273 (████████████ are not *per se* crimes of dishonesty); Gilton, 2019 WL 7050219, at *3 (considering admission of misdemeanor ████████ convictions).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**                    **'O'**

Thus, the Court requested oral argument as to the specifics of these convictions such that the Court could ascertain whether they are probative of truthfulness. Nonetheless, the parties were unable to provide additional information regarding these convictions. The Court therefore reserves judgment until the time of trial as to whether ███████ misdemeanor numbers 4, 6, 9 and 10 are admissible. Finally, misdemeanors 7 and 8 are for ████████████████. The Court finds these convictions are inadmissible because they do not carry an indicium of untrustworthiness. See Procknow v. Curry, 826 F.3d 1009, 1012 (8th Cir. 2016) (noting district court precluded evidence of misdemeanor ████████████████).

The government objects to the two felonies from over 10 years ago (numbers 13 and 14) on the grounds that they are over 10 years old and any probative value is substantially outweighed by undue prejudice. Defendant argues that "all felony convictions in Appendix A … are admissible because the specific facts of each conviction establish that their probative value substantially outweighs their prejudicial effect." Opp. to Gov't MIL 1 at 4. The Court initially found the record was insufficient to rule on the admissibility of convictions 13 and 14 because it lacked specifics of these crimes. The government reports that ██████ was released from his ████████, 2009 conviction for ████████████████ (number 13) on ████, 2009; and that ██████ was released from his ████████████, 2009 conviction for ██████ ████████████████ (number 14) that same day. Dkt. 111, Appendix B. The government does not provide any details about these arrests.[3] The Court finds that the remoteness of these convictions, coupled with their limited probative value, weighs against their being received in evidence.

Finally, the government does not object to admission of evidence of ██████████ felony convictions from the past 10 years (numbers 15 through 20). The Court finds evidence of these convictions admissible.

5. ████████████

Witness ████████████ was convicted of:

(1) misdemeanor ████████████████, 1998,

---

[3] The government does include police reports documenting ██████████ arrests (1) on ████████, 2011, for ████████████████, dkt. 111, Exhs. B, C; and (2) on ████████, 2013, for ████████████████, id., Exh. D. However, it is unclear whether these arrests pertain to any of the prior convictions at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

(2) misdemeanor ███████████████████████, 1998,

(3) misdemeanor ██████████████████████, 1999,

(4) misdemeanor ████████████████████████████, 2011,

(5) misdemeanor ████████████████████████████, 2014,

(6) misdemeanor ████████████████████████, 2015,

(7) misdemeanor ██████████████, 2015,

(8) misdemeanor ███████████████████████, 2015,

(9) misdemeanor ███████████████████████, 2016

(10)   misdemeanor █████████████████████████████████████, 2017,

(11)   misdemeanor ████████████████████████, 2018,

(12)   misdemeanor ███████████████████████████████, 2019,

(13)   felony █████████████████████████████, 1998,

(14)   felony ██████████████████████████, 1999,

(15)   felony ██████████████████████████, 2000,

(16)   felony ████████████████████████████, 2000,

(17)   felony ██████████████████████████, 2008,

(18)   felony ████████████████████████, 2008,

(19)   felony ███████████████████████████, 2008,

(20)   felony █████████████████████████, 2009,

(21)   felony ██████████████████████████, 2013 (no objection),

(22)   felony ██████████████████████████, 2013 (no objection),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

(23)   felony █████████████████████████████████████, 2015 (no objection),

(24)   felony ████████████████████████████, 2016 (no objection), and

(25)   felony ██████████████████████████████, 2018 (no objection).

Appendix A 5–7.

The government objects that Rule 608 precludes evidence of ████████ misdemeanor convictions (numbers 1 through 12) because the crimes did not involve an element of dishonesty or false statement, and are thus inadmissible pursuant to Rule 609. Convictions 1 and 7 are for ████████. The Court finds the record is inadequate to determine whether the convictions for ████ are probative of reliability. <u>Glenn</u>, 667 F.2d at 1273 (████████████████ are not *per se* crimes of dishonesty); <u>Gilton</u>, 2019 WL 7050219, at *3 (considering admission of misdemeanor ████████ convictions). Thus, the Court reserves judgment on these convictions. Convictions 2 and 3 are for ████████████████████. The Court finds these convictions inadmissible because they do not involve an indicium of a propensity to lie. <u>See Garcia</u>, 2019 WL 4282903, at *8 (conviction for ████████████████ "do[es] not involve a dishonest act or false statement, and thus would not be admissible for impeachment purposes"). Convictions 4, 5 and 11 are for ████████████████, and convictions 10 and 12 are for ████████████████████████. The Court finds evidence of these convictions inadmissible because they do not carry and indicium of a propensity to lie. <u>See Lopez</u>, 2018 WL 8785416, at *2 (finding "Plaintiff's convictions for ████████████ ████████████████████ are misdemeanor convictions which do not involve any allegations of falsity or moral turpitude"). Convictions 6 and 9 are for ████████████████. The Court finds these convictions inadmissible because they do not carry an indicium of untruthfulness. Finally, conviction 8 is for ████████ ████. The Court finds the record is inadequate to determine whether the conviction for ████████████ is probative of reliability. <u>See United States v. Mercado</u>, No. 18-CR-00549-LHK-3, 2020 WL 999842, at *6 (N.D. Cal. Mar. 2, 2020) (weighing evidence to determine whether witness' prior conviction for ████████████████ was admissible pursuant to Rule 609). Thus, the Court reserves judgment on this conviction.

The government objects to the eight felonies from over 10 years ago (numbers 13 through 20) on the grounds that they are over 10 years old and any probative value is substantially outweighed by undue prejudice. Defendant argues ████████ convictions for ████████ ████████████ (numbers 17 through 20) should be admitted "to establish that ████ has a history of drug abuse and often purchases or possesses his own drugs." Def. Supp. Brief at 2. The Court initially found the record was insufficient for the Court to rule on the admissibility of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

these convictions.   The Court therefore requested oral argument as to the dates of ███████ release from confinement for each of the challenged felony convictions (numbers 13 through 20), and the specifics of these convictions such that the Court can weigh their probative value against any prejudicial effect.  The government reports that ██████ was released from his ███████, 2008 conviction for █████████████████ (number 17) on ███████, 2008; and that ███████ was released from his ███████, 2008 conviction for ██████ █████ (number 18) that same day.  Dkt. 111, Appendix B.  The government does not provide any details about these arrests.[4]  The Court finds that the remoteness of these convictions, coupled with their limited probative value, weighs against their being received in evidence.

Finally, the government does not object to admission of evidence of the felony convictions from the past ten years (numbers 21 through 25).  The Court finds evidence of these convictions admissible.

6.  ████████████

Witness ████████ was convicted of:

(1) misdemeanor █████████████████, 1995, and

(2) misdemeanor ███████████████████, 1997.

Appendix A at 8.

The government objects that Rule 608 precludes evidence of these convictions because the crimes did not involve an element of dishonesty or false statement, and are thus not admissible pursuant to Rule 609.  Defendant does not object.  The Court finds that evidence of ████████ misdemeanor convictions for ███████████ and ████████████████ is not admissible because these crimes do not involve an indicium of a propensity to lie.  See Garcia, 2019 WL 4282903, at *9 (██████████ "is not a conviction of a crime that involved a dishonest act or false statement"); U.S.A. v. Avery, No. CR 11-00405 MMM, 2011 WL 13136810, at *5 (C.D. Cal. Dec. 15, 2011) (██████████ "do[es] not involve

---

[4] The government does include police reports documenting ████████ arrest (1) on ████████, 2008, for ███████████████████, dkt. 111, Exh. A; (2) on ████████, 2015, for ████████, id., Exh. E; and (3) on ████████, 2015, for ████████████████████, id., Exh. F.  However, it is unclear whether these arrests pertain to any of the prior convictions at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

dishonesty or false statement, and would not be admissible as impeachment evidence under Rule 609").

████████ was also arrested, but not convicted, for ████████████████████████████████, 2019.  In Appendix A, the government states it has "[n]o objection" to admission of this evidence.  Appendix A at 8. However, in its motion *in limine*, the government argues that use of prior arrests should be excluded because an arrest, without more, is not probative of truthfulness.  See Gov't MIL 1 at 3. Defendant, for his part, argues, without elaborating, that "the court should allow prior arrest evidence contained in Appendix A because it is probative of the character for truthfulness or untruthfulness of the witness to whom it is attributed."  Opp. to Gov't MIL 1 at 4.

There is no dispute that evidence of prior arrests cannot be admitted pursuant to Rule 609, which permits admission only of "criminal conviction[s]."  Fed. R. Evid. 609(a).  Furthermore, Rule 608 prohibits the introduction of other act evidence to attack a witness' truthfulness except convictions permitted by Rule 609.  Fed. R. Evid. 608(b).  The only question, then, is whether defendant may inquire into ████████ prior arrest during cross examination, pursuant to Rule 608(b).  Typically, evidence of prior arrests is not probative of truthfulness and thus may not be inquired into on cross examination.  Michelson v. United States, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. … Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.").  However, if the witness "opens the door" by putting his credibility at issue, on cross examination it may become appropriate to inquire into the arrest. See United States v. Epis, 332 F. App'x 409, 414 (9th Cir. 2009) (unpublished) (permitting inquiry, on cross examination, of prior arrest for cultivation of marijuana for sale where defendant "placed his credibility at issue when he testified on direct examination that he was motivated to engage in multiple conspiracies to grow marijuana for humanitarian reasons, rather than by his desire for profit").  Accordingly, defendant may not introduce evidence of ████████ arrests unless ██████ opens the door, making such evidence probative of his truthfulness.

7. ██████████

Witness ████████████ was convicted of:

(1) Felony ████████████████████████████████, 2010.

Appendix A at 8.

The government makes no objection to admission of evidence of this conviction.  The Court finds evidence of this conviction admissible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

███████ also has a ███████, 2007 juvenile adjudication for ███████. Id. at 8. The government objects to admission of this adjudication on the grounds that evidence of this adjudication is unnecessary to determine guilt or innocence. Id. Defendant argues, without elaborating, the contrary: that "the juvenile adjudication … is necessary to fairly determine guilt or innocence." Opp. to Gov't MIL 1 at 4.

Pursuant to Rule 609, evidence of a juvenile adjudication is admissible "only if: (1) it is offered in a criminal case; (2) the adjudication was of a witness other than the defendant; (3) an adult's conviction for that offense would be admissible to attack the adult's credibility; and (4) admitting the evidence is necessary to fairly determine guilt or innocence." Fed. R. Evid. 609(d). Although there is no objection to admission of evidence of ███████ conviction for ███████ ███████████████████████████████████████████████, the record is unclear as to whether the prior juvenile adjudication for ███████ resulted in a prohibition against ███████████████. Furthermore, it remains unclear as to whether the juvenile adjudication is necessary to determine guilt or innocence. Accordingly, the Court reserves judgment on admission of ███████ juvenile adjudication.

Accordingly, the Court **GRANTS in part** and **reserves judgment** on the government's first motion *in limine*.

**B. Government's MIL #2**

The government filed a motion *in limine* to admit certain other acts evidence in the form of percipient witness testimony. Dkt. 50 ("Gov't MIL 2"). Defendant opposes. Dkt. 85 ("Opp. to Gov't MIL 2").

The government intends to call four percipient witnesses. ███████████████ is expected to testify that, between approximately 2015 and summer 2019, ███████ met with defendant numerous times at defendant's apartment to engage in party and play in exchange for money. Gov't MIL 2 at 3. ███████ is expected to testify that, in these sessions, defendant provided methamphetamine and requested ███████ wear certain underwear and engage in sexually explicit activities. Id. at 3– 4. ███████ is further expected to testify that defendant offered to pay ███████ more money if he permitted defendant to inject methamphetamine into him, and often pressured ███████ to inject methamphetamine. Id. at 4. ███████ is also expected to testify that he witnessed the two men who overdosed and died at defendant's residence, Dean and Moore, on other occasions before their fatal overdoses. Id. at 5.

The second percipient witness, ███████████████, is expected to testify that he met defendant online in 2016, and that he participated in several party and play sessions at defendant's residence. Id. at 6. ███████ is further expected to testify that he believes defendant forced him to ingest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**                    **'O'**

tranquilizing drugs without his knowledge, and that defendant then injected an unknown substance into him while he was incapacitated. Id.

The third percipient witness, ███████████, is expected to testify that he met with defendant in approximately June and October 2018. Id. ███████ is expected to testify that he participated in several party and play sessions at which defendant offered him methamphetamine. Id. ███████ is expected to testify that, on one occasion, defendant paid ███████ for letting defendant inject him with methamphetamine. Id. ███████ is expected to testify that, at each party and play session he attended, defendant provided drugs including methamphetamine. Id. Finally, ███████ is expected to testify that defendant offered ███████ 100 dollars for any men he referred to defendant for party and play sessions. Id. at 7.

The government's fourth percipient witness is ███████Stok██. ███████ is expected to testify that he met defendant on a dating app several years ago, and that defendant offered ███████ money to "party" with him. Id. ███████ is expected to testify that he attended several party and play sessions, and that defendant requested he use methamphetamine. Id. ███████ is further expected to testify that defendant paid him to dress in certain underwear and engage in sexually explicit activities, and that twice defendant paid ███████ to travel from Las Vegas to Los Angeles to participate in a party and play session. Id. Finally, ███████ is expected to testify that he referred one person to defendant, and that that person ultimately participated in defendant's party and play sessions. Id. at 7–8.

The government moves to admit evidence of defendant's distribution of drugs to ███████, ███████, ███████ and ███████, none of whom is identified in the First Superseding Indictment. The government advances two grounds in support of the admission of this evidence. First, the government argues "this evidence is direct evidence of the charge in Count Seven, that Buck used his apartment as a drug premises, and of the government's theory set forth in the Introductory Allegations that these distributions occurred in the course of party and play sessions." Id. at 1. Second, "the evidence is admissible as 'other acts' under Rule 404(b) to show Buck intended to distribute drugs to the men he invited to his apartment to party and play; that he had the knowledge of how to obtain drugs, prepare injections, and administer those injections to others; that he was motivated by a desire to administer injections during his party and play sessions; and that he had a common plan or scheme of recruiting men and distributing drugs to them in the same or similar ritualistic fashion." Id.

Defendant argues this evidence "is irrelevant, especially as to counts one and two and the spill over [sic] effect of admitting the requested evidence will cause a jury to speculate and convict Mr. Buck in the deaths of Mr. Dean and Mr. Moore even though there is no other evidence to establish his guilt." Opp. to Gov't MIL 2 at 3. Defendant further argues that the evidence is inadmissible as it goes to prove character or criminal propensity, in violation of Rule 404(b). Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

at 4. "This other act or uncharged evidence fails to prove a material fact because it cannot establish by direct proof or inference that Mr. Buck is responsible for Mr. Moore's death or Mr. Dean's death." Id. at 7. Defendant further argues that the other act evidence is cumulative. Id. at 8.

Pursuant to Rule 404(b), evidence of a defendant's crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). Rule 404(b) is an "inclusi[ve]" rule meaning "other acts evidence is admissible whenever relevant to an issue other than defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). Evidence is therefore admissible under Rule 404(b) if it (1) tends to prove a material fact; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the person committed the act; and (4) if admitted to prove intent or knowledge, the act is similar to that charged. United States v. Tsinnijinnie, 91 F.3d 1285, 1288–89 (9th Cir. 1996). The Ninth Circuit has not established a specific number of years after which past conduct becomes too remote. United States v. Vo, 413 F.3d 1010, 1019 (9th Cir. 2005) (citing United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997)). To support a finding that the person committed the act—the third prong—a jury must be able to "reasonably conclude" that the act occurred. United States v. Bailey, 696 F.3d 794, 799 (9th Cir. 2012) (citing Huddleston v. United States, 485 U.S. 681, 685 (1988)).

When the four factors are met, the evidence should be admitted "unless its prejudicial impact substantially outweighs its probative value," pursuant to Rule 403. Johnson, 132 F.3d at 1282. "The Government, however, must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." Mehrmanesh, 689 F.2d at 830. "In admitting relevant evidence under rule 404(b), the trial court must balance the probative value of the evidence against the possibility that the jury would be prejudiced against the defendant because of his participation in other criminal conduct." United States v. Young, 573 F.2d 1137, 1140 (9th Cir. 1978) (citation omitted). "This determination is generally a matter of discretion for the trial court." Young, 573 F.2d at 1140 (citing United States v. Hearst, 563 F.2d 1331, 1336 (9th Cir. 1977); United States v. Rocha, 553 F.2d 615, 616 (9th Cir. 1977)). If the Court chooses to admit evidence of other bad acts, the Court may give an appropriate limiting instruction.

Here, the evidence expected from ▮▮▮, ▮▮▮, ▮▮▮ and ▮▮▮ is appropriate pursuant to Rule 404(b) because it demonstrates that defendant intended and had the capacity to distribute drugs to participants in party and play sessions. Furthermore, the prejudicial effect of this evidence does not substantially outweigh its probative value because its probative value is high: The evidence establishes facts central to the government's allegations that defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

distributed methamphetamine and maintained drug-involved premises. Finally, it appears to the Court that defendant's concern that the evidence will cause the jury to speculate regarding the counts alleged can be cured with a limiting instruction. The parties are directed to meet and confer and propose a limiting instruction.

Accordingly, the Court **GRANTS** the government's second motion *in limine* subject to submission of an appropriate limiting instruction.

### C. Defendant's MILs #1, #2, and #3

Defendant seeks to exclude certain statements made, during police interviews following Moore's death, by Moore's mother, Latisha Nixon, dkt. 51 ("Def. MIL 1"); his aunt, Gena Livings, dkt. 53 ("Def. MIL 2"); and his grandmother, Sandra Bufford, dkt. 54 ("Def. MIL 3"). The government does not oppose defendant's motions to exclude the statements made by Livings or Bufford. Dkt. 80 ("Opp. to Def. MIL 1") at 1. However, the government does oppose the exclusion of some of Nixon's statements. Id.

Nixon, in her interview, related biographical information about Moore, conversations she and Moore had about defendant, information about Moore's years living in Los Angeles and in Texas, and Moore's account of the events leading up to his July 2017 trip to Los Angeles to see defendant. Id. Defendant moves to exclude eight statements Nixon made in her interview, Def. MIL 1 at 4–5; the government responds that it only intends to seek to admit four of these statements, Opp. to Def. MIL 1 at 4. Defendant summarizes the eight statements as follows:

(1) In 2016, Mr. Moore called her [Nixon] and told her a rich and powerful male named Ed Buck held him against his will at Buck's home. He said Buck shot him up with drugs and his arms were red and swollen.

(2) Ms. Nixon stated Mr. Moore sent her pictures of his arms, but she no longer had them.

(3) Ms. Nixon told detectives she told Mr. Moore to file a police report and go to the hospital but that there was no record of Mr. Moore having made a police report and she did not know if he went to a hospital.

(4) In March 2017 Mr. Moore called Ms. Nixon and told her []he had been in the streets and friends were using methamphetamine. He said if he did not come home to her, he was going to die. [The government does not oppose defendant's objection.]

(5) Mr. Moore returned to Texas in April or May 2017. Ms. Nixon picked up Moore from the airport. Mr. Moore suffered seizures and body tremors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

(6) Ms. Nixon told detectives Mr. Moore told her that he went to Mr. Buck's home off and on and that Mr. Buck injected him with methamphetamine which was Mr. Buck's preference.  [Defendant's objection unopposed.]

(7) Ms. Nixon told detectives that Mr. Moore told her Mr. Buck once paid him $2000.00 and that Mr. Buck would also ingest methamphetamine with him.  [Defendant's objection unopposed.]

(8) Ms. Nixon told detectives Mr. Moore told her Mr. Buck had a fetish for young black men.  [Defendant's objection unopposed.]

Def. MIL 1 at 4–5.

    1.  <u>Statement 1</u>

Defendant objects to the admission of Nixon's statement that Moore "called her and told her a rich and powerful male named Ed Buck held him against his will at Buck's home.  He said Buck shot him up with drugs and his arms were red and swollen."  Def. MIL 1 at 4.  Moore made this statement in a phone call to Nixon in 2016.  Opp. to Def. MIL 1 at 4.  According to the government, Nixon recounted that Moore "called her screaming and crying—a 'cry from his gut' that she had rarely heard from her son."  <u>Id.</u>  The government acknowledges that the precise amount of time between Moore's leaving defendant's apartment and his call to Nixon is unknown, but argues that "the evidence strongly[] suggests that it was immediately after the event[.]"  <u>Id.</u> at 5.

Defendant argues statement 1 is inadmissible hearsay, and that it "lacks trustworthiness."  Def. MIL 1 at 5.  The government concedes the statement is hearsay, but argues it is nonetheless admissible as a hearsay exception, namely as either an excited utterance or a present sense impression.  Opp. to Def. MIL 1 at 4.  In his supplemental briefing, defendant responds that the Court should hear testimony from Nixon before determining whether the statement was an excited utterance.  Def. Supp. Brief at 2.  The government contends that this argument should be disregarded because it exceeds the scope of the Court's requested supplemental briefing.

An "excited utterance" is "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).  Here, Moore's statement to his mother may be an excited utterance because it related to Moore's experience at a party and play session at defendant's apartment, and may have been made while Moore was under the stress of excitement caused by that session.  Nevertheless, the Court reserves judgment on the admissibility of statement 1 until trial, and, if necessary, will hear Nixon's testimony outside the presence of the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**            **'O'**

2. <u>Statement 2</u>

Defendant objects to the admission of Nixon's statement that defendant "sent [Nixon] pictures of his arms, but she no longer had them." Def. MIL 1 at 4. Defendant argues the photographs lack foundation, that it is unfair to permit testimony about the photographs if they are not produced for defendant to inspect, and that Nixon is biased against defendant. <u>Id.</u> at 5–6. The government argues simply that the statement is relevant and admissible. Opp. to Def. MIL 1 at 4.

The Court finds that the photographs themselves lack foundation. Furthermore, Nixon's statements that the photographs depicted Moore's arms is hearsay because it is being introduced for the truth of the matter asserted, namely, that the photographs did in fact depict Moore's arms. <u>See</u> Fed. R. Evid. 801. Accordingly, this statement is inadmissible. Fed. R. Evid. 802.

3. <u>Statement 3</u>

Defendant objects to the admission of Nixon's statement that she "told Mr. Moore to file a police report and go to the hospital but that there was no record of Mr. Moore having made a police report and she did not know if he went to a hospital." Def. MIL 1 at 4. Defendant does not state specifically on what grounds he bases his objection to this evidence. <u>See id.</u> at 6. The government argues Nixon's urging Moore to go to a hospital and file a police report is not hearsay because it is a direction, not an assertion. Opp. to Def. MIL 1 at 6.

The Court finds that this statement is not hearsay because it is not offered to prove the truth of the matter asserted. Nixon may testify to what she previously said. The Court notes, though, that Nixon is likely not competent to testify that there is in fact no record of Moore's having made a police report.

4. <u>Statement 5</u>

Defendant objects to the admission of Nixon's statement that "Moore returned to Texas in April or May 2017. Ms. Nixon picked up Moore from the airport. Mr. Moore suffered seizures and body tremors." Def. MIL 1 at 4. The government responds that "[s]ome brief biographical information regarding when Gemmel Moore lived in Los Angeles—and was thus accessible to defendant—and when he lived in Texas—prior to returning to Los Angeles to visit defendant— is necessary to establish a general timeline and present the government's case in a logical and coherent manner." Opp. to Def. MIL 1 at 7. Further, the government responds that it does not plan to introduce evidence that Moore suffered from seizures or body tremors unless defendant opens the door to such evidence by, for example, "suggesting that Mr. Moore had medical conditions requiring the use of syringes or suggesting that the prescription medications Mr. Moore possessed in defendant's apartment on the evening he died were for recreational use." <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

The Court finds that this statement is not hearsay and that Nixon may testify to what she did, namely, that she picked Moore up from the airport.  Furthermore, this evidence is relevant pursuant to Rule 401 because Moore's whereabouts are relevant to count one, which alleges defendant distributed methamphetamine to Moore, and count eight, which alleges defendant persuaded, induced and enticed Moore to travel in interstate commerce to engage in prostitution.

Accordingly, the Court **reserves judgment** on defendant's first motion *in limine* with respect to statement 1, **DENIES** defendant's first motion *in limine* with respect to statements 3 and 5, and **GRANTS** defendant's first motion *in limine* with respect to statement 2, 4, 6, 7 and 8, as well as his second and third motions *in limine* as unopposed.

### D. Defendant's MIL #4

Defendant's fourth motion *in limine* seeks to preclude evidence of a text message and a video attachment in that text conversation.  Dkt. 55 ("Def. MIL 4").  The government opposes. Dkt. 75 ("Opp. to Def. MIL 4").

On July 20, 2017, Moore sent a text message to defendant, saying, "Hey mr Buck," immediately followed by three images of African American men in underwear.  Dkt. 75, Declaration of Lindsay M. Bailey ("Bailey Decl. 4"), Exh. 1 ("Moore Text Messages") at 1. Defendant responded, "Who is this," to which Moore replied, "Gemmel your master slave." Id. Defendant responded, "Or slave master."  Id.  Moore then said he was "starting to miss la," accompanied by a short video of a woman injecting a clear liquid substance into an unidentified male arm and a text reading only "?".  Id. at 2; Opp. to Def. MIL 4 at 1.  On the morning of July 21, 2020, defendant replied, "Be here now."  Moore Text Messages at 2.  After several more text exchanges, on July 22, 2017, Moore stated he was "still in Texas" but that "it be wonderful if you can send for me please ill behave."  Id.  On July 25, 2017, Defendant and Moore made arrangements for Moore to fly to Los Angeles.  Id.  Based on the text exchange, Moore landed in Los Angeles on July 27, 2017, where defendant arranged for Moore to be picked up at the airport. Id. at 4.  Moore died that day at defendant's apartment.  Opp. to Def. MIL 4 at 2.

Defendant objects to admission of the video of a man being injected with a clear liquid, and the text that preceded it, namely Moore's text: "I'm starting to miss la."  Defendant argues that the probative value of this evidence is outweighed by its prejudicial effect.  Def. MIL 4 at 3. Defendant further contends that there is no way to identify what substance is being injected, and that the jury will be forced to speculate as to the meaning of the video.  Id.

The government responds that "[t]he message and video are highly probative of defendant's 'party and play' relationship with Mr. Moore and serve as direct evidence of Count Eight, which alleges that defendant knowingly persuaded, induced, and enticed Mr. Moore to travel in interstate commerce to Los Angeles to engage in prostitution[.]"  Opp. to Def. MIL 4 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

3.  Furthermore, the government argues that defendant's response "[b]e here now" shows he did view and respond to both the written message and the video, id., and that the jury will not have to speculate as to the meaning of the video because other evidence adduced at trial will demonstrate that Moore and defendant engaged in party and play sessions involving injections of methamphetamine, id. at 4.

Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice[.]"  When applying Rule 403, the probative value of a piece of evidence "may be calculated by comparing evidentiary alternatives," and the Court should take into account "the full evidentiary context of the case."  Old Chief v. United States, 519 U.S. 172, 182–84 (1997).  "'Unfair prejudice,' within the meaning of the rule, occurs when the evidence has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990)  (quoting Rule 403 advisory committee's note).  Finally, "the application of Rule 403 must be cautious and sparing [as i]ts major function is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000) (quotation omitted).

Here, although the text message and video are prejudicial to defendant, they are not unfairly so, and any prejudice is outweighed by their probative weight.  As the government argues, the text and video are probative of the course of conduct engaged in by defendant and Moore, namely, their party and play sessions.  This evidence is also probative of the fact that the party and play sessions involved injections of narcotics.  And the text is probative of count eight, which alleges defendant persuaded, induced and enticed Moore to travel in interstate commerce to engage in prostitution.

Accordingly, the Court **DENIES** defendant's fourth motion *in limine*.

**E.  Defendant's MIL #5**

Defendant makes "a broad objection to any and all other acts evidence" on the grounds that it is "unreliable and irrelevant."  Dkt. 56 ("Def. MIL 5") at 5–6.  Defendant contends he must make such an objection because the government "did not provide [] any specific details" about what other acts evidence it intends to introduce at trial.  Id.

The government responds that it provided its initial Rule 404(b) notice on October 22, 2020, and a supplemental notice on November 13, 2020.  Dkt. 74 ("Opp. to Def. MIL 5") at 1; see dkt. 74, Declaration of Chelsea Norell, Exh. 1 ("Initial 404(b) Notice"), Exh. 2 ("Supp. 404(b) Notice").  These notices alerted defendant that, "[i]n addition to the victims identified in the First Superseding Indictment, the government intends to call other witnesses to whom defendant distributed or attempted to distribute drugs, including methamphetamine, gammy hydroxybutyric

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

acid ('GHB') and clonazepam."  Initial 404(b) Notice at 2.  Furthermore, these notices stated that "[t]his evidence is also admissible as 'other acts' evidence under Federal Rule of Evidence 404(b)."  Id. at 3.  Finally, the government contends its motion *in limine* to admit witness testimony as direct evidence, filed on November 20, 2020, set forth additional details regarding the other acts evidence the government intended to introduce.  Opp. to Def. MIL 5 at 2–3.  As discussed above, these details include the names of the four witnesses—███████, ███████, ███████ and ███████—as well as their expected testimony regarding their experiences at party and play sessions at defendant's apartment.  See Gov't MIL 2.  In any event, the government maintains that this notice was not strictly necessary because these additional witnesses' testimony is direct evidence of the charge in count seven, that defendant used his apartment as a drug premises, and of the government's theory that these distributions occurred in the course of party and play sessions.  Id. at 1–2; Gov't MIL 2 at 1.

The Court, in addressing the government's second motion *in limine*, above, has already addressed the admissibility of the percipient witnesses' testimony pursuant to Rule 404(b).  As to the question of adequate notice, Rule 404(b) requires that prosecutors "must provide reasonable notice of any [other acts] evidence that the prosecutor intends to offer at trial," and to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose … in writing before trial[.]"  Fed. R. Evid. 404(b)(3).

Here, the government provided adequate notice with its October 22, 2020 and November 13, 2020 letters to defendant's counsel.  The October 22, 2020 letter, for instance, states that the government intends to call witnesses other than those named in the First Superseding Indictment to testify to their experience at party and play sessions at defendant's apartment.  Initial 404(b) Notice at 1.  It adds that the purpose of this testimony is to establish defendant's course of conduct in hosting party and play sessions, which the government argues is permissible under Rule 404(b) because it shows:

> [T]hat defendant had a motive of distributing drugs as part of "party and play" sessions; that he had the knowledge of how to prepare and administer an injection of methamphetamine and knew the effects of those injections; that he had a common plan or scheme of recruiting men and distributing drugs to them in the same or similar ritualistic fashion; and that he had a modus operandi of distributing drugs to vulnerable men experiencing homelessness or addiction, who were typically young and African American.

Id. at 2.  Although the notices do not name the specific witnesses the government intends to call, these witnesses are necessarily known to defendant because they attended party and play sessions.  In any event, the government's second motion *in limine* names the four percipient witnesses the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**                    **'O'**

government intends to call—███████, ███████, ███████ and ███████—and the government has stated that it will amend or add to this list as necessary.  Opp. to Def. MIL 5 at 3.

Accordingly, the Court **DENIES** defendant's fifth motion *in limine*.

**F.  Defendant's MIL #6**

Defendant moves *in limine* to exclude from evidence several racially inflammatory statements either attributed to defendant or from text message conversations to which defendant was a party.  Dkt. 57 ("Def. MIL 6").  The government opposes.  Dkt. 78 ("Opp. to Def. MIL 6").

During the course of this investigation, Los Angeles Sheriff's Department investigators interviewed individuals who participated in party and play sessions at defendant's apartment. Several of these witnesses reported that defendant used racist language.  For instance, C.S. related that defendant became angered when C.S. refused to ingest narcotics or alcohol and that, when angered, defendant would curse and degrade C.S., calling him, variously, "nigger," "big dick nigger," and "his big dick nigger friend."  Opp. at 1; dkt. 88, Declaration of Lindsay M. Bailey ("Bailey Decl. 6"), Exh. 1 ("C.S. Witness Report") at 3–4.  Witness D.E., too, reported that defendant referred to D.E. as his "nigger buddy," and that he heard defendant refer to another African American man as his "crack baby."  Opp. at 2; Bailey Decl. 6, Exh. 2 ("D.E. Witness Report") at 1–2. Witness D.B., who was homeless, reports that he lived with defendant for several months in 2019 and that defendant called him "nigger" during this stay.  Opp. at 3; Bailey Decl. 6, Exh. 6 ("D.B. Witness Report") at 3–4.  Likewise, witness J.C. reports that defendant belittled him by calling him "boy" during party and play sessions, and that defendant at times referred to African American people as "[t]hose people" or "[y]ou people."  Bailey Decl. 6, Exh. 3 ("J.C. Witness Report") at 3.

Defendant also apparently used the term "boy" in a text message exchange with another African American man.  Defendant stated, "[w]ell boy how do you suppose you could make it up to me?"  Opp. at 2; Bailey Decl. 6, Exh. 3 at 105.  In another text exchange defendant apparently used the term again.  Defendant initiated this exchange, which occurred on November 12, 2018. Bailey Decl. 6, Exh. 5 at 87.  The unidentified victim then asked defendant, "[w]hat on your mi[n]d," to which defendant answered, "[g]etting fucked up [a]nd getting you fucked up."  Id. The victim replied, "[f]uxk yea []your nigger boy," to which defendant responded, "[w]ell boy why aren't you here[?]"  Id.  The victim replied, "[c]ool wi[t]h helping your nigger boy," to which defendant wrote, "[y]ou need an Uber."  Id.  The victim responded, "I do … Cool with donation white master."  Id.

Defendant moves to exclude evidence of these remarks on the grounds that they "prove[] nothing and add[] nothing to this case.  The probative value of the introduction of racial epithets is outweighed by the unfair and undue prejudice it will create."  Def. MIL 6 at 3–4.  Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

adds that, because defendant did not have sex exclusively with African American men over the course of his life, "it is hard to see why race is relevant here." Id. at 3.  For the first time, defendant moves to exclude these remarks on the ground that they will result in "undue consumption of the [C]ourt's time" as defendant will be forced to introduce a range of additional evidence aimed at establishing that defendant is not racist.  Def. Supp. Brief at 3.

The government argues that, although "defendant's use of these terms is offensive, they are also probative towards defendant's attitudes towards African American men, the manner in which he fetishized these men, and his ability to assert power over them."  Opp. to Def. MIL 6 at 1.  Furthermore, the government argues that "defendant's use of such language is necessary to provide context to defendant's motives and intent, and the Court should therefore permit their introduction at trial." Id.  Furthermore, the government asserts that race is an element of this case because "a white man[] systematically targeted vulnerable black men to exploit for his own pleasure." Id. at 4.  Accordingly, the racist statements "would serve to add context to defendant's relationships with his victims, the power dynamic that was clearly at play, and defendant's modus operandi in distributing drugs, which is directly relevant to the charges." Id. at 6.  In addition, the government contends that defendant's new argument that this evidence will result in the undue consumption of time should be disregarded as it exceeds the scope of the Court's requested supplemental briefing.

Evidence of racist remarks attributable to defendant, or in conversations in which defendant was a party, may be relevant to defendant's alleged motive for inviting the victims and witnesses in this case to party and play sessions, and to his alleged motive for providing and injecting them with narcotics.  See United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990) (admission of evidence defendant asked to attend skinhead gathering admissible over Rule 403 objection because evidence "tended to establish Skillman's racial animus and that he might act on his beliefs"); United States v. Harley, No. 16-CR-2761-BEN (BLM), 2018 WL 11236171, at *2 (S.D. Cal. Aug. 17, 2018) (finding "racially-tinged remarks … were relevant to the question of Harley's intent in spitting on the federal officer" and were thus admissible over Rule 403 objection), aff'd, 790 F. App'x 844 (9th Cir. 2019).  Nevertheless, the Court will not permit the use of the "N" word.  The Court believes that the language contained in police reports and otherwise should be sanitized.  The Court suggests that, in lieu of the specifically offensive language, the government substitute "[pejorative term for an African American]."

Accordingly, the Court **DENIES** defendant's sixth motion *in limine* to the extent it seeks complete preclusion of the inflammatory statements, but the Court requires the statements be sanitized as described above.  To the extent defendant argues admission of this evidence will unduly consume time, the Court reserves judgment on this argument until the time of trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

## G. Defendant's MIL #7

The government seeks to admit DNA evidence found on drug paraphernalia discovered on a ledge attached to the exterior of the apartment building one floor below defendant's apartment. Defendant moves *in limine* to exclude the DNA evidence. Dkt. 58 ("Def. MIL 7"). The government opposes. Dkt. 73 ("Opp. to Def. MIL 7").

On January 7, 2019, investigators with the Los Angeles Sheriff's Department ("LASD") responded to defendant's apartment following the apparent overdose of Dean. Opp. to Def. MIL 7 at 1. Following the initial investigation, but on that same day, the LASD received a call that a witness had observed a suspicious package outside the apartment's window. Id. The LASD therefore returned to the apartment in response to this call, and retrieved the package. Id. Investigators opened the package and found several glass pipes, hypodermic needles, and two clear plastic baggies that contained residue of a crystalline substance resembling methamphetamine. Id.

The LASD sent the pipes and needles to the LASD Scientific Services Bureau, where Senior Criminalist Amber Sage tested them for DNA. Id. at 2. The results showed the various likelihoods that the DNA samples originated from either defendant or Dean, with some syringes having insufficient DNA for analysis. Id.; see dkt. 73, Declaration of Lindsay M. Bailey ("Bailey Decl. 7"), Exh. 1 ("DNA Examination Report"). Specifically, the DNA Examination Report concludes that, among other things, there is "very strong support for the proposition that Edward Buck and Timothy Dean are co-contributors to the DNA obtained" from several pipes, id. at 3, 4, 5; and "very strong support for the proposition that Timothy Dean is a contributor to the DNA obtained" from a syringe, id. at 5.

The DNA Examination Report uses likelihood ratios to communicate the likelihood that a given DNA sample came from a known DNA source, in this case, from defendant or Dean. The DNA Examination Report explains that a "likelihood ratio is a statistical estimate of the probability of obtaining the DNA evidence profiles given competing … hypotheses (H1 versus H2)" where "[t]he H1 typically includes the person of interest (POI) while the H2 typically includes a random person unrelated to the POI." Id. at 7–8. The DNA Examination Report further notes that, "[i]f necessary, DNA profile interpretation and the calculation of likelihood ratios was facilitated by the use of the STRmix software program." Id. at 7. The report adds that "[a]ll assumptions that are made as part of the interpretation are stated in the conclusions for each sample. This includes the assumed number of contributors and any assumed known contributors." Id.

Defendant argues that, "[i]n measuring the statistical probabilities associated with the DNA analysis the Sheriffs [sic] Department Scientific Services Bureau used a controversial and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**            **'O'**

unsound scientific method commonly referred to as STRmix." Def. MIL 7 at 2.  Defendant continues that the STRmix methodology "fails … the second, third, and fourth prongs of Daubert."  Id. at 8.  To support this argument, defendant points to an article published by the National Institute of Standards and Technology on October 12, 2017.  Id. at 7; see Steven P. Lund & Hari Iyer, Likelihood Ratio as Weight of Forensic Evidence: A Closer Look, 122 J. of Res. of Nat'l Inst. of Standards and Technology (Oct. 2017) ("NIST Article").

The government responds that "defendant both relies on an article that has been sharply criticized for its use of flawed logic and reasoning, and selects out-of-context quotes that misrepresent the overall assertions made in the article."  Opp. to Def. MIL 7 at 5.  The government elaborates that, "contrary to defendant's assertions, the NIST Article does not seek to exclude any and all expert testimony that relies on likelihood ratios.  Rather, the article acknowledges that the likelihood ratio may be 'a potential tool for experts in their communications to triers of fact.'" Id. at 6 (quoting NIST Article at 27).  In any event, the government adds that, "even if the article did support defendant's proposition that all expert testimony relying on likelihood ratios should be excluded, the main tenets of the article have been sharply criticized in the years since its publication."  Id. at 7; see Simone Gittelson, et al., A Response to "Likelihood Ratio as Weight of Forensic Evidence: A Closer Look" by Lund and Iyer, 288 Forensic Science Int'l 7 (Jul. 2018) (concluding that the NIST Article "reject[s] practices that do not exist and suggest[s] an approach that is already in place").

Under Rule 702, a trial judge acts as a "gatekeeper" to ensure that expert testimony "is not only relevant, but reliable."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999).  The Supreme Court in Daubert enumerated a list of factors useful for evaluating the reliability of an expert.  These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community.  Daubert, 509 U.S. at 587–89.  Finally, "[e]xpert testimony is liberally admitted under the Federal Rules." United States v. Pritchard, 993 F. Supp. 2d 1203, 1207 (C.D. Cal. 2014), aff'd, 692 F. App'x 349 (9th Cir. 2017).  Accordingly, "judges are entitled to broad discretion when discharging their gatekeeping function" and deciding "whether to admit expert testimony."  United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Defendant does not question whether the likelihood ratio methodology or the STRmix software can and have been tested.  See Def. MIL 7 at 8.  The Court therefore begins the inquiry

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CRIMINAL MINUTES – GENERAL**          **'O'**

with the second Daubert factor, namely, whether the likelihood ratio methodology has been subjected to peer review and publication.  Defendant argues the scientific community has identified flaws in the methodology, citing only to the NIST Article.  Def. MIL 7 at 8.  The government responds that the likelihood ratio methodology, as well as the STRmix methodology underlying the analysis of the DNA samples, has been peer reviewed and is widely accepted.  Opp. to Def. MIL 7 at 9 (citing Gittelson, supra; Colin Aitken, et al., Commentary: Likelihood Ratio as Weight of Forensic Evidence: A Closer Look, 9 Frontiers in Genetics 224 (Jun. 22, 2018)).  The Court finds the second Daubert prong is satisfied because the likelihood ratio methodology and the methodology underlying the DNA testing itself have been peer reviewed.  If defendant has critiques of the reliability of these methods, this is a question of the weight of the evidence, and is for the jury.

Turning to the third Daubert factor, defendant argues "meaningful standards" for error rates do not exist because STRmix is a proprietary program.  Def. MIL 7 at 8.  Further, "defendant's inability to cross-examine a qualified STRMix [sic] software expert about the impact and basis for the program's formulas, directions, and outcomes, would violate his Sixth Amendment right to confrontation."  Id.  The Government responds that, first, the STRmix program and the report produced with its aid is not testimonial, and, second, that Sage does not need to be an expert in the STRmix program because it has been peer reviewed and found to be reliable.  Opp. to Def. MIL 7 at 10.  The Court agrees with the government and finds that the DNA Examination Report, which was produced with the aid of the STRmix program, is not testimonial.  See Pritchard, 993 F. Supp. 2d at 1213 (fact that reports relied on external programs or software did not present Confrontation Clause problem because "[t]hey are not formalized testimonial materials; nor are they statements made primarily for accusing a specific individual at trial" (citation omitted)).  Furthermore, the scientific community has determined that the STRmix program is reliable.  See Jo-Ann Bright, et al., Developmental validation of STRmix expert software for the interpretation of forensic DNA profiles, 23 Forensic Science Int'l Genetics 226 (Jul. 2016) ("[D]emonstrat[ing] that STRmix is suitable for its intended use for the interpretation of single source and mixed DNA profiles.").

Finally, as discussed above, likelihood ratios and the methodologies upon which the DNA Examination Report relies have been accepted by the relevant scientific community.  The fourth Daubert factor is therefore also met.

At the evidentiary hearing, the government explained the DNA evidence is relevant because it is evidence that defendant was a participant in the drug activity that led to Dean's death.  Specifically, it tends to show that defendant and Dean ingested narcotics together, and that defendant hid the evidence of this conduct on the ledge.  Therefore, and for the reasons stated above, the Court concludes that this evidence is not only relevant, but admissible pursuant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## REDACTED CRIMINAL MINUTES – GENERAL          'O'

Daubert.  The weight that should be given to the proposed evidence is a matter for cross examination.

Accordingly, the Court **DENIES** defendant's seventh motion *in limine*.

### H. Defendant's MIL #8

Defendant moves to exclude Moore's statements included in his journal or diary.  Dkt. 71 ("Def. MIL 8") at 3.  The government does not oppose defendant's motion.  Dkt. 77.

Accordingly, the Court **GRANTS** defendant's eighth motion *in limine*.

## IV.   CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS in part** and **reserves judgment** on the government's motion *in limine* 1,

(2) **GRANTS** the government's motion *in limine* 2,

(3) **GRANTS in part**, **DENIES in part** and **reserves judgment** on defendant's motion *in limine* 1,

(4) **GRANTS** defendant's motion *in limine* 2,

(5) **GRANTS** defendant's motion *in limine* 3,

(6) **DENIES** defendant's motion *in limine* 4,

(7) **DENIES** defendant's motion *in limine* 5,

(8) **DENIES** defendant's motion *in limine* 6,

(9) **DENIES** defendant's motion *in limine* 7, and

(10)   **GRANTS** defendant's motion *in limine* 8.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |