Mark J. Werksman, Esq. (State Bar No. 120767)
Elizabeth S. Little, Esq. (State Bar No. 307944)
WERKSMAN JACKSON & QUINN LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942
Email: mwerksman@werksmanjackson.com

Attorneys for Defendant
EDWARD BUCK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>EDWARD BUCK,<br><br>　　　　　Defendant. | CASE NO. 19-CR-00595-CAS<br><br>SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL<br><br>Date:　　　　March 28, 2022<br>Time:　　　　10:00 a.m.<br>Courtroom: 8D<br><br>Hon. Christina A. Snyder |

**TO THE HONORABLE CHRISTINA A. SNYDER, UNITED STATES DISTRICT COURT JUDGE AND ASSISTANT UNITED STATES ATTORNEY CHELSEA NORELL:**

　　　Defendant Edward Buck, by and through his counsel of record, Werksman Jackson & Quinn LLP, hereby files the instant Supplemental Memorandum of Points and Authorities in Support of Motion for Judgment of Acquittal.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The government failed to present evidence proving each and every element of the crimes charged against Mr. Buck as required by law. In spite of that fact, the jury convicted Mr. Buck of the charged crimes on the basis of extremely prejudicial and irrelevant character evidence, which included a concerted effort to kink-shame Mr. Buck by presenting graphic images and videos of his sexual fetishes. Indeed, in addition to showing photographs and videos of explicit sexual acts, the government elicited testimony from a parade of financially-motivated houseless individuals that he was a racist sexual deviant, who on one instance purportedly attempted to murder a person with a chainsaw (all of which constitutes false and impermissible uncharged character evidence that Mr. Buck, obviously, contests). The impact of this prejudicial and irrelevant character evidence was so damaging that on day four of the nine-day trial, it prompted the Court to suggest that as a result of the "ongoing psychological impact" this evidence may have on the jury, "it may well be that [the Court] offer[s] counseling to them at the conclusion of the case." (4 RT 40-41.)

     As a result, following a nine-day trial, which concluded on July 30, 2021, Mr. Buck was found guilty of two counts of Distributing a Controlled Substance Resulting in Death in violation of 21 U.S.C. section 841(a)(1), (b)(1)(c) (Counts One and Two); four counts of Distributing a Controlled Substance in violation of 21 U.S.C. section 841(a)(1), (b)(1)(c) (Count Three through Six); a single count of Using and Maintaining a Residence for the Purpose of Distributing and Using a Controlled Substance in violation of 21 U.S.C. section 856(a)(1) (Count Seven); and two counts of Persuading, Inducing, or Enticing a Person to Travel in Interstate Commerce to Engage in Prostitution in violation of 18 U.S.C. section

2422(a) (Counts Eight and Nine). As set forth in Mr. Buck's Motion for Judgment of Acquittal, which was filed on August 3, 2021, and as further explained herein, a reasonable jury could not have found each of the elements of the charged crimes beyond a reasonable doubt. Instead, it is clear that the jury convicted Mr. Buck on the basis of irrelevant and prejudicial character evidence. As such, Mr. Buck requests that this Court enter a judgment of acquittal in his case.

## II.
## ARGUMENT

The Due Process Clause "requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt." Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004). To ensure that a defendant is convicted in accordance with due process principles, Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. A motion for judgment of acquittal is "'an important safeguard to the defendant,' because '[i]t tests the sufficiency of the evidence against him and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt'." United States v. Tisor, 96 F.3d 370, 379 (9th Cir. 1996), cert. denied, 519 U.S. 1140 (1997), citing 2 Charles Allen Wright, Federal Practice and Procedure, Criminal, 2d § 461, pp. 637-38 (1982).

Although the trial court must view the evidence in the light most favorable to the government when considering a Rule 29 motion, the government still bears the burden of proving a defendant's guilt beyond a reasonable doubt. Furthermore, evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference backed by a chain of logic, supports the government's case. Juan H. v. Allen, 408 F.3d 1262, 1277 (9th Cir. 2005).

### A. THERE WAS INSUFFICIENT EVIDENCE OF COUNTS ONE AND TWO, DISTRIBUTION OF A CONTROLLED SUBSTANCE RESULTING IN DEATH

As set forth in the Motion for Judgment of Acquittal, in order to sustain a conviction on Counts One and Two, Distribution of a Controlled Substance Resulting in Death, the government has to prove (1) that the defendant knowingly or intentionally distributed, or possessed with intent to distribute a controlled substance, and (2) that the defendant's distribution of drugs was the "but for" cause of death. 18 U.S.C. § (a)(1), (b)(1)(C). Indeed, "where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Burrage v. United States, 571 U.S. 204, 218-19 (2014). Put another way, the government must prove that the victim would have lived but for the use of meth distributed by the defendant. Id. at 219.

In Burrage, the decedent was a long-time drug user who died following an extended binge that included heroin purchased from the defendant. Id. at 204. In that case, after medical experts testified at trial that the decedent might have died even if he had not taken the heroin, defendant moved for a judgment of acquittal, arguing that his death could only "result" from heroin use if there was evidence that heroin was a but-for cause of death. On those facts, the United States Supreme Court reversed his conviction and remanded the case for further proceedings consistent with the Court's opinion. Ibid. Thus, the government bears the burden of proving, beyond a reasonable doubt, that the decedents in this case would have lived but for the use of meth distributed by the defendant. As explained below and in the Motion for Judgment of Acquittal, there was insufficient evidence to sustain a conviction on Counts One and Two.

### 1. TIMOTHY DEAN

The government has failed to prove that methamphetamine distributed by Mr. Buck was the but-for cause of Mr. Dean's death. First, the amount of methamphetamine in Mr. Dean's femoral blood was 1.6 micrograms per milliliter, which is on the low end of the toxic range (and the extremely low end of the lethal range, particularly for a long-term user). (4 RT at 84.) Toxicological results from Mr. Dean's vitreous blood also showed the presence of .146 grams percent of alcohol in his system. (3 RT at 46.) Significantly, text messages from the night of Mr. Dean's death, confirm that Mr. Buck told Mr. Dean **not** to come over that evening because he had to fast for a doctor's appointment he needed to attend in the morning. (5 RT 212.) Text messages exchanged between Mr. Buck and Mr. Dean further confirmed that in spite of Mr. Buck's representations that he needed to sleep, Mr. Dean ignored his requests and appeared at his apartment. (5 RT 212.) Thus, the evidence shows that Mr. Buck could not and did not want to participate or have anyone else engage in behavior (namely, taking methamphetamine) that would keep him up all night because he had to fast for a doctor's appointment in the morning. That, taken with the low-level of methamphetamine found in Mr. Dean's system (a chronic methamphetamine user who appeared at Mr. Buck's apartment in the middle of the night), suggests that Mr. Buck did not distribute *any* methamphetamine to Mr. Dean on that occasion. Moreover, the Los Angeles County Medical Examiner who completed Mr. Dean's autopsy confirmed that the most recent injection site, which could have been used anywhere from three minutes to three days prior to death, was on top of scar tissue on his front right elbow, which is indicative of knowing and deliberate self-injection. (5 RT at 170.) Thus, there is insufficient evidence to support the government's theory that Mr. Buck distributed *any* meth to Mr. Dean on that occasion as required by law.

Second, even if the Court finds that there was sufficient evidence that Mr. Buck distributed methamphetamine to Mr. Dean on the night in question (which the defense asserts there was not), methamphetamine was not the but-for cause of Mr. Dean's death. The evidence at trial was uncontroverted that Mr. Dean suffered from severe coronary artery disease, chronic myocarditis, and hepatitis, which were likely brought on by chronic drug use. As opined by defense expert Dr. Marvin Pietruszca (1) the cause of death in Mr. Dean's case was cardiomyopathy, also known as congestive heart failure; and (2) Mr. Dean would have died that night *regardless of whether he took methamphetamine*. (8 RT 85-86, 121.) Additionally, Dr. Matthew Miller, the medical examiner who performed Mr. Dean's autopsy testified **that Mr. Dean's coronary artery disease was severe enough to be fatal by itself and that coronary artery disease and alcohol toxicity could have been the proximate cause of death.** (5 RT 166.) As explained by the United States Supreme Court in <u>Burrage v. United States</u>, 571 U.S. at 218-19, the burden is on the government to prove, beyond a reasonable doubt, that the victim would have lived but for the use of meth distributed by the defendant. <u>Id.</u> at 219. The evidence presented at trial is clearly insufficient to show that Mr. Dean would have lived but for the ingestion of methamphetamine the government purports was distributed by Mr. Buck that night. By all expert accounts, Mr. Dean's underlying condition of coronary artery disease was severe enough to be fatal by itself, and that, combined with alcohol toxicity, at the very least may have been the proximate cause of death. The government's argument that Mr. Dean would have lived but for the ingestion of methamphetamine **is mere speculation** and lacks any scientific basis or logical support in the record.

Here, in spite of the complete lack of evidence that methamphetamine was the but-for cause of Mr. Dean's death, the jury – severely prejudiced by the

Second, even if the Court finds that there was sufficient evidence that Mr. Buck distributed methamphetamine to Mr. Dean on the night in question (which the defense asserts there was not), methamphetamine was not the but-for cause of Mr. Dean's death. The evidence at trial was uncontroverted that Mr. Dean suffered from severe coronary artery disease, chronic myocarditis, and hepatitis, which were likely brought on by chronic drug use. As opined by defense expert Dr. Marvin Pietruszca (1) the cause of death in Mr. Dean's case was cardiomyopathy, also known as congestive heart failure; and (2) Mr. Dean would have died that night *regardless of whether he took methamphetamine*. (8 RT 85-86, 121.) Additionally, Dr. Matthew Miller, the medical examiner who performed Mr. Dean's autopsy testified **that Mr. Dean's coronary artery disease was severe enough to be fatal by itself and that coronary artery disease and alcohol toxicity could have been the proximate cause of death.** (5 RT 166.) As explained by the United States Supreme Court in <u>Burrage v. United States</u>, 571 U.S. at 218-19, the burden is on the government to prove, beyond a reasonable doubt, that the victim would have lived but for the use of meth distributed by the defendant. <u>Id.</u> at 219. The evidence presented at trial is clearly insufficient to show that Mr. Dean would have lived but for the ingestion of methamphetamine the government purports was distributed by Mr. Buck that night. By all expert accounts, Mr. Dean's underlying condition of coronary artery disease was severe enough to be fatal by itself, and that, combined with alcohol toxicity, at the very least may have been the proximate cause of death. The government's argument that Mr. Dean would have lived but for the ingestion of methamphetamine **is mere speculation** and lacks any scientific basis or logical support in the record.

Here, in spite of the complete lack of evidence that methamphetamine was the but-for cause of Mr. Dean's death, the jury – severely prejudiced by the

psychological impact of the impermissible character evidence admitted in this case – found him guilty anyway.

Accordingly, Mr. Buck respectfully requests that this Court reject the jury's verdict on the basis that there was insufficient evidence at trial as to Count Two.

## 2. GEMMEL MOORE

Here, Mr. Moore's mom, a former nurse's aide, testified that while living with her in Texas in 2017, in the months before his death, Mr. Moore suffered from seizures and body tremors and appeared to have cancer or Acquired Immunodeficiency Syndrome ("AIDS"). (3 RT 217-218.) As explained by defense expert Dr. Marvin Pietruszca, Mr. Moore's heart slides demonstrated the presence of macrophages, inflammatory cells typically observed in cases with AIDS, and his pathology showed complications of HIV in the form of a pulmonary edema consistent with the diagnosis of AIDS. (8 RT 104-105.) Dr. Pietruszca further testified that the coroner's conclusion that Mr. Moore's cause of death was a pulmonary edema brought on by a methamphetamine overdose was mistaken because a pulmonary edema does not occur in cases of a meth overdose – rather, pulmonary edemas are seen in cases where a person overdoses on opiates. (8 RT 83.) Moreover, the government's own expert, medical examiner Dr. Kevin Young, who was responsible for completing the autopsy in Mr. Moore's case, conceded that AIDS can cause a patient to be more susceptible to various infections, which could result in pulmonary edema. (4 RT 103:10-15.) Similarly, the government's expert, Dr. Carstairs, testified that in advanced HIV infection, also known as AIDS, a patient is more susceptible to various infections, and those infections could result in pulmonary edema. (6 RT 267-68.) Here, the government's theory that the pulmonary edema resulting in Mr. Moore's death was caused by a methamphetamine overdose, rather than an infection related to

HIV/AIDS, is similarly based on mere speculation. Thus, there is insufficient evidence that the government met its burden of proving, beyond a reasonable doubt, that Mr. Moore would have lived but for the methamphetamine the government purports (without any direct evidence) was distributed by Mr. Buck.

Here, again, in spite of the dearth of evidence in the record supporting the government's burden to prove that methamphetamine distributed by Mr. Buck was the but-for cause of Mr. Moore's death, the jury – prejudiced by the psychological impact of the impermissible character evidence admitted in this case – found him guilty without sufficient support in the record. Accordingly, there was insufficient evidence at trial as to Count One.

**B. THERE WAS INSUFFICIENT EVIDENCE OF COUNT SEVEN, THAT MR. BUCK USED AND MAINTAINED A RESIDENCE FOR THE PURPOSE OF DISTRIBUTING AND USING A CONTROLLED SUBSTANCE**

In order to sustain a conviction on Count Seven, the government must prove the defendant (1) knowingly opened, leased, rented, used, or maintained any place, whether permanently or temporarily, (2) *for the purpose of manufacturing, distributing, or using any controlled substance.* 21 U.S.C. § 856(a)(1) (emphasis added). Congress's primary purpose in enacting section 856(a)(1) was to target those who use their property to profit from drug sales—not to penalize those who simply consume drugs in their own home. United States v. Shetler, 655 F.3d 1150, 1162 (9th Cir. 2011). Thus, the Ninth Circuit has held that, in the context of a residential home, the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put. Ibid. "An individual does not employ his property for a 'primary or principal' use of drug activity where he merely grows or manufactures drugs in his own home for his own consumption (and for those who share his residence and its residential purposes)." Id. at 1163.

Here, as set forth in the Motion for Judgment of Acquittal, the primary purpose of Mr. Buck's apartment, where he lived for twenty years, was to serve as his residence—and those residential purposes incident to life (i.e., a place to sleep, eat, etc.). While the government presented evidence that certain individuals came over to his residence and consumed methamphetamine, they were there to share his residence for its primary residential purpose—i.e., to engage socially with Buck, have a place to shower, and have a place to sleep off the street. At trial, Nusret Arnautovic, Mr. Buck's apartment manager of twenty years (who resided in the unit directly across from Mr. Buck), testified that Mr. Buck, of course, had many different visitors over the years – of various demographics – but confirmed that **(1) he never observed drugs; (2) that Mr. Buck kept his apartment clean; (3) that he never heard any unusual noises; and (4) that Mr. Buck was a good tenant.** (3 RT 37-40.) Thus, as Mr. Buck's apartment manager of twenty years confirms, Mr. Buck was a good tenant, who clearly was not using his apartment for the primary use of drug distribution.

Accordingly, the government produced insufficient evidence as to Count Seven.

### III.
### CONCLUSION

As explained above, the government – unable to meet their burden to prove each and every element of the charged crimes beyond a reasonable doubt – instead, relied on character assassination in the extreme by admitting prejudicial and false character evidence that Mr. Buck was a racist sexual deviant who once attempted murder in the image of Texas Chainsaw Massacre's Leatherface, so that the jury would capriciously convict him of all charges even without sufficient evidence of his guilt. For the foregoing reasons, Mr. Buck respectfully requests

that this Court grant the instant Motion for Judgment of Acquittal.

DATED:   March 10, 2022                    Respectfully submitted,

WERKSMAN JACKSON & QUINN LLP

Mark J. Werksman
Elizabeth S. Little
Attorneys for Defendant
Edward Buck