TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CHELSEA NORELL (Cal. Bar No. 280831)
Assistant United States Attorney
Violent & Organized Crime Section
LINDSAY M. BAILEY (Cal. Bar No. 285047)
Assistant United States Attorney
Deputy Chief, General Crimes Section
     1300/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2216/6875
     Facsimile: (213) 894-0141
     E-mail:    chelsea.norell@usdoj.gov
                lindsay.bailey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-595-CAS |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTION AND MOTION TO STRIKE DEFENDANT'S SUPPLEMENTAL MOTION FOR ACQUITTAL |
| v. | |
| EDWARD BUCK, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Chelsea Norell and Lindsay M. Bailey, hereby files its Objection and Motion to Strike defendant EDWARD BUCK's Supplemental Motion for Judgment of Acquittal (Dkt. 221).

//
//
//

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 17, 2022              Respectfully submitted,

                                          TRACY L. WILKISON
                                        United States Attorney

                                          SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                          /s/
                                        CHELSEA NORELL
                                        LINDSAY M. BAILEY
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELEVANT BACKGROUND

On July 27, 2021, following a two-week jury trial, defendant EDWARD BUCK was convicted on all nine counts of the First Superseding Indictment ("FSI"). On August 3, 2021, defendant filed his Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. (Dkt. 178 ("Motion" or "Mot.").) The government filed its Opposition to this Motion on August 10, 2021. (Dkt. 181 ("Opposition" or "Opp.").) Defendant did not file a Reply. The initial hearing on this Motion took place on August 30, 2021, during which the Court stated its tentative intent to deny defendant's motion. (Dkt. 184.) Less than a month later, defendant retained new counsel. (Dkt. 186). At defendant's request, the hearing on defendant's Motion was continued multiple times and is currently scheduled for March 28, 2022. (Dkt. 212.)

On March 10, 2022, <u>months</u> after defendant's Motion for Judgment of Acquittal was fully briefed and fewer than three weeks before the Court's hearing on the Motion, defendant filed a self-styled "Supplemental Memorandum of Points and Authorities" for his Motion without seeking leave of the Court. (Dkt. 221 ("Supplemental Motion" or "Supp. Mot.").) Defendant's unsanctioned filing is an improper attempt at a do-over for a fully briefed motion and should be stricken.

### II. ARGUMENT

#### A. Defendant's Supplemental Motion is Procedurally Improper

Federal courts have broad discretion to "set procedures and deadlines for pretrial motions." <u>United States v. Alvarez-Perez</u>, 629 F.3d 1053, 1061 (9th Cir. 2010). Indeed, the Ninth Circuit has

recognized that a failure to comply with briefing procedures can "frustrate the judge's ability to manage the case in an orderly manner." Id. Thus, district courts also have authority under Federal Rule of Criminal Procedure 57 to enforce these procedures. Id.; Christian v. Mattel, Inc., 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."); United States v. Doe, 627 F.2d 181, 183 (9th Cir. 1980) ("The trial court's power to administer the court calendar and to control the time and conduct of the trial is broad."). For example, Rule 57(b) states that a "judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed. R. Crim. P. 57(b). Such authority includes the ability to strike pleadings. See, e.g., United States v. Lowe, 2:14-CR-0004-JAD, 2015 WL 419878, *6 (D. Nev. Jan. 30, 2015) (striking defendant's notice of due process violation because it "interefe[d] with the Court's management of its docket").

    The Court's Standing Order, the Federal Rules of Criminal Procedure, and the Central District of California's Local Criminal Rules set specific requirements for motions, oppositions, and replies. When there is not an applicable Local Criminal Rule but an analogous Local Civil Rule, the Local Civil Rule "shall govern the conduct of criminal proceedings before the District Court." L. Cr. R. 57-1. Under the Local Civil Rules, all motion oppositions must be filed no later than twenty-one days before the date designated for the hearing, while replies must be filed no later than fourteen days before the date designated for the hearing. L. Civ. Rs. 7-9, 7-10.

Here, defendant filed his original Motion on August 3, 2021, and set the hearing on the Motion for August 30, 2021.  (Dkts. 178, 182.) Because defendant filed his Motion a day late, the Court then granted the government leave to file its Opposition by August 10, 2021, pursuant to the parties' stipulation, and the government did, in fact, file its Opposition on that date.  (Dkts. 180, 181.) Defendant's Reply was therefore due no later than August 16, 2021, as the Court held a hearing on defendant's Motion on August 30, 2021. (Dkt. 184.)  Accordingly, defendant forewent his right to file a Reply in response to the government's Opposition.

Worse still, defendant does not style his most recent briefing as a Reply to the government's arguments, but rather as a "Supplemental Memorandum of Points and Authorities" that largely addresses the same issues raised in defendant's original Motion. (Supp. Mot. at 1.)  Indeed, defendant's Supplemental Motion fails to acknowledge that his Motion for Judgment of Acquittal was fully briefed back in August of 2021, nor does it once reference arguments made in the government's Opposition.  (Id.)  Rather, defendant simply filed a second motion, and he did so without receiving, nor even requesting, leave from the Court to file it.  See Court's Standing Order ("Such motions will not be considered unless counsel obtains leave to file more than one motion").  Defendant's brazen attempts to get a second bite at the apple should be denied and his Supplemental Motion should be stricken.

**B.   Defendant's Supplemental Motion Does Not Meet its Burden Under Federal Rule of Criminal Procedure 29**

Even if the Court does consider defendant's Supplemental Motion (which it should not), defendant's Motion for Judgment of Acquittal

3

still fails for the reasons discussed in the government's Opposition. In his Supplemental Motion, defendant does not challenge all of the evidence supporting defendant's nine convictions. Rather, he focuses his challenges on four primary categories of evidence, as follows: first, evidence that defendant distributed methamphetamine to Timothy Dean on January 7, 2019; second, evidence that methamphetamine was the but-for cause of Mr. Dean's death; third, evidence that methamphetamine was the but-for cause of Gemmel Moore's death; and fourth, evidence that defendant primarily used his apartment for purposes of distributing methamphetamine.[1]  As more fully discussed in the government's Opposition, defendant's challenges all fail when the evidence is viewed in the light most favorable to the government and the Court resolves any conflicts in favor of the verdict.  See United States v. Lombera-Valdovinas, 429 F.3d 927, 920 (9th Cir. 2005); United States v. Corona-Verbera, 509 F.3d 1105, 1117 (9th Cir. 2007).

> 1. A Reasonable Juror Could Find that Defendant Distributed Methamphetamine to Mr. Dean on January 7, 2019

Defendant claims that there was insufficient evidence to establish that defendant distributed methamphetamine to Mr. Dean based on (1) the fact that defendant originally told Mr. Dean not to come over because he had to fast for a doctor's appointment the following morning; and (2) Mr. Dean was injected on top of scar

---

[1] Defendant also seems to request reconsideration of the Court's previously rulings on the parties' motions in limine by claiming, without any support, that the jury based its ruling on "extremely prejudicial and irrelevant character evidence" and "impermissible uncharged character evidence."  (Supp. Mot. at 2.)  This is clearly an improper attempt to have the Court belatedly reconsider its ruling on the motions in limine, and the government requests that these arguments be similarly stricken.

4

tissue, suggesting self-injection. Neither of these arguments counters the evidence presented at trial, including victim testimony, corroborated by messages and videos recovered from defendant's digital devices that defendant always provided methamphetamine during party and play session and would not let others supply their own methamphetamine. (See, e.g., Dkt. 155 at 14:12-22; 167:8-13.) The evidence was also clear that Mr. Dean did not arrive unannounced as defendant let Mr. Dean into his apartment and had the door waiting open when Mr. Dean arrived. (Dkt. 159; Ex. 117.1.) Defendant and Mr. Dean then clearly engaged in a party-and-play session as Mr. Dean's body was found naked on the floor surrounded by sex toys. (Dkt. 159; Ex. 117.1.) Government witness Donald Schulze then testified that he sold defendant fourteen grams of methamphetamine on the evening of January 5, 2019, less than 48 hours before Mr. Dean arrived at defendant's apartment, and there was no evidence of drugs or drug paraphernalia in any of Mr. Dean's belongings. (Dkt. 213 at 107:17-118:13; Dkt. 201 at 143:22-24.) Most damningly, defendant threw out his syringes and needles, which contained both his own DNA and Mr. Dean's DNA, before calling the paramedics, showing defendant's consciousness of guilt. (Dkt. 201 at 199:18-202:22; Ex. 107; Dkt. 215 at 29:20-24, 33:24-35:1; 36:8-37:17.)

Based on this evidence, a reasonable jury could find that defendant engaged in party and play with Mr. Dean despite defendant's doctor's appointment the following morning.[2] A reasonable jury could also conclude that defendant supplied Mr. Dean with methamphetamine even if they believed defendant's argument that Mr. Dean injected

---

[2] Indeed, testimony at trial established that defendant would often distribute methamphetamine without using it himself.

himself, and inference that would need to be resolved in favor of defendant, not the government.

### 2. A Reasonable Jury Could Find that Methamphetamine was the "But-For" Cause of Mr. Dean and Mr. Moore's Deaths

In arguing insufficient evidence as to "but-for" causation in his Supplemental Motion, defendant again picks and chooses testimony while making arguments that are highly dependent on the testimony of discredited defense expert, Dr. Marvin Pietruszka. Unfortunately for defendant, the jury was free to completely disregard Dr. Pietruszka's findings as that of a hired gun when he testified on direct examination that 3.9 ug/mL and 1.6 ug/mL in the femoral blood were both considered to be in the low toxic range, but later admitted on cross-examination that he had previously testified that 0.09 ug/mL was a high concentration of methamphetamine known to cause death. (Dkt. 217 at 115:12-116:23.) A reasonable jury could easily disregard <u>all</u> of Dr. Pietruszka's opinions as lacking credibility, or they could believe only his impeachment testimony – that 0.09 ug/mL is in the lethal range – in coming to a verdict on this case.

Similarly, defendant's Supplemental Motion completely ignores the government's expert on "but-for" causation, Dr. Shaun Carstairs, a forensic toxicologist and Emergency Room physician who opined as to the cause of both Mr. Dean and Mr. Moore's deaths. This is likely because Dr. Carstairs testified that the amount of methamphetamine in both Mr. Dean and Mr. Moore's bloodstreams was within or above the range known to cause death. (Dkt. 231 at 261:6-25; 265:23-266:5; 273:1-12.) He also testified that pulmonary edema is a common byproduct of overdose deaths, not an independent cause of death, and that there was no evidence in the autopsy to suggest that Mr. Dean

died as a "direct result of coronary artery disease, i.e., a clot in one of those diseased arteries which would be a heart attack.³" (Dkt. 213 at 294:16-19.)  He similarly testified that there was no indication that Mr. Moore suffered from AIDS, nor any respiratory infection that would cause pulmonary edema, and coroner Dr. Kevin Young testified that Mr. Moore died of a methamphetamine overdose as there was no other apparent alternate cause of death.  (Id. at 267:21-268:9, 296:19-21; Dkt. 156 at 96:7-15.)

Ultimately, Dr. Carstairs, Dr. Miller, and Dr. Young all clearly established that, but for using methamphetamine, Mr. Dean and Mr. Moore would not have died.  As described in the government's Opposition, there was more than sufficient evidence for a reasonable jury to find that defendant distributed methamphetamine to these two men, and that his distribution caused their deaths.  A reasonable jury could therefore convict defendant of Counts One and Two, and defendant's Motion and Supplemental Motion must therefore fail.

> 3. A Reasonable Jury Could Find that Defendant Maintained a Drug Involved Premises

Finally, defendant seems to claim that a reasonable jury could not have convicted defendant on Count Seven despite the abundance of evidence introduced at trial.  The government presented multiple videos taken by defendant in which defendant distributed

---

³ Once again, defendant misstates the testimony from coroner Dr. Matthew Miller in claiming that Mr. Dean's coronary artery disease was fatal. (Supp. Mot. at 6.)  This is incorrect. Dr. Miller stated only that a hypothetical person could die from combined ethanol and arterial atherosclerosis, but that there was a "zero percent" chance that methamphetamine played no role in Mr. Dean's death. (Dkt. 201 at 164:7-10.)  Combined with Dr. Carstairs' testimony that there were no independent signs of a heart attack, a reasonable jury could conclude that methamphetamine was the but-for cause of Mr. Dean's death.

7

methamphetamine to Mr. Moore (Ex. 79.1-79.41); security camera stills depicting the revolving door of men who would visit defendant's apartment, some in the days or weeks following Mr. Moore and Mr. Dean's deaths (Ex. 104.3); the testimony of the named victims who testified that defendant would distribute methamphetamine to them every time they visited, including Dane Brown, who emotionally testified that defendant would inject him with methamphetamine multiple times every day (Dkt. 215 at 115-171); a biohazard container filled with discarded syringes recovered from defendant's car (Ex. 109); the drugs and drug paraphernalia recovered throughout defendant's apartment (Exs. 79, 102, 109); and the countless text messages from defendant in which he offered to host party and play session in his apartment and supply drugs (see, e.g., Exs. 77.2, 77.7, 77.11, 82.3). Neighbors also described the various men who would visit defendant, some of whom were clearly high when they left. (Dkt. 156 at 9:18-11:10.) Based on this evidence, a reasonable jury could reasonably conclude that distributing drugs was one of the primary or principal purposes to which defendant used his apartment.

Once again, defendant's few citations to contrary evidence do not meet defendant's heavy burden. Specifically, defendant claims that a reasonable jury could not have convicted defendant on Count Seven because defendant's former apartment manager testified that defendant was a "good tenant" who "kept his apartment clean." (Supp. Mot. at 9.) Unfortunately for defendant, he is not entitled to a Motion for Judgment of Acquittal simply because some of the evidence presented at trial was favorable to him. At best, this evidence establishes that defendant put on a good show for the apartment manager so that he did not lose his rent-controlled apartment; it

8

does not negate the evidence that defendant primarily used his apartment to host party and play sessions and distribute drugs. When viewed under the correct standard, and as explained more fully in the government's Opposition, a reasonably jury could easily find defendant guilty on all counts of conviction.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court strike defendant's Supplemental Motion. Regardless, even if the Court considered defendant's Supplemental Motion on the merits, defendant's Motion for Judgment of Acquittal should be denied for the reasons discussed in the government's Opposition.