## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL          'O'

| Case No. | 2:19-CR-00595-CAS-1 | | Date | April 4, 2022 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Laura Elias | Linday Bailey Chelsea Norell |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| EDWARD BUCK | X | X | | MARK WERKSMAN | X | | X |

**Proceedings:**       DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL (Dkt. 178, filed on August 3, 2021)

## I.      INTRODUCTION AND BACKGROUND

Defendant Edward Buck is charged with six counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts One through Six); one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) (Count Seven); and two counts of coercion or enticement to commit prostitution in violation of 18 U.S.C. § 2422(a) (Counts Eight and Nine). Dkt. 32, First Superseding Indictment ("FSI"). The counts against defendant arise from defendant's alleged solicitation of men to consume drugs, which defendant provided, and to perform sexual acts at defendant's apartment. Id. ¶ 1. Defendant is alleged to have held these so-called "party and play" sessions from at least January 2011, to September 17, 2019. Id. Defendant solicited his victims, some of whom were homeless, using social media platforms and a "recruiter" who solicited victims on defendant's behalf. Id. ¶ 2. During these sessions, defendant allegedly distributed drugs, including methamphetamine, pressured victims into using drugs, and at times injected his victims with methamphetamine, with and without their consent. Id. ¶¶ 2–3. The government alleged that, on at least two occasions, defendant distributed lethal quantities of methamphetamine, resulting in the death of his victims, Gemmel Moore and Timothy Dean. Id.

Defendant's trial began on July 13, 2021. Dkt. 153. At trial, the government called 45 witnesses and introduced approximately 170 exhibits into evidence, including videos, text messages, surveillance footage, photographs, forensic evidence, business records, and methamphetamine and drug paraphernalia seized from defendant's apartment. Defendant called one witness, a medical expert, in response. The jury began deliberations on July 24, 2021, and returned a verdict later that day, finding defendant guilty on all counts. Dkt. 167. On the special

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

verdict form, the jury specifically found that Moore's and Dean's deaths resulted from defendant's distribution of methamphetamine.  Dkt. 171.

Defendant timely moved for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29"), at the close of the government's case, and before the case was submitted to the jury.  See Fed. R. Crim. P. 29(a).  Defendant renewed that motion for acquittal on August 3, 2021, after the jury returned its verdict.[1]  Dkt. 178 ("Mot."); see Fed. R. Crim. P. 29(c)(1).  The government opposed on August 10, 2021.  Dkt. 181 ("Opp.").

On August 30, 2021, the Court conferred with counsel, and continued the hearing on defendant's motion for judgment of acquittal to October 18, 2021.  Dkt. 184.  On September 23, 2021, the Court approved defendant's request to substitute his attorney.  Dkt. 187.  On September 30, 2021, pursuant to a stipulation between the parties, the Court continued the hearing until December 13, 2021.  Dkt. 191.  On November 11, 2021, defendant filed a motion to continue the hearing until February 28, 2021, arguing that "the court reporters in this case are experiencing significant delays in their ability to produce the trial transcripts," and that defendant's substituted attorney needs time to review the transcripts because he did not represent Buck at trial.  Dkt. 203.  The government opposed defendant's motion to continue the hearing.  Dkt. 206.  On November 8, 2021, the Court continued the hearing on defendant's motion for judgment of acquittal to February 14, 2022, and set the sentencing for April 4, 2022.  Dkts. 207, 208.

On January 18, 2022, due to additional delays with respect to the completion of the trial transcripts, the parties submitted a joint filing outlining their respective positions on the hearing date.  Dkt. 209.  On January 24, 2022, the Court continued the hearing date on defendant's motion for judgment of acquittal to March 21, 2022.  Dkt. 211.  Thereafter, on January 27, 2022, the Court continued the hearing for an additional week, to March 28, 2022.  Dkt. 212.

On March 10, 2022, defendant filed a supplemental memorandum in support of his motion for judgment of acquittal.  Dkt. 221 ("Supp. Mot.").  On March 17, 2022, the government submitted its supplemental opposition.[2]  Dkt. 233 ("Supp. Opp.").

---

[1] While defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a), defendant did not move for a new trial pursuant to Fed. R. Crim. P. 30, which requires that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 30(b)(2).  To the extent defendant's counsel suggested at oral argument that the Court should grant a new trial in lieu of an acquittal, "the rules permit a judge to order a new trial only in response to a defendant's motion."  United States v. Navarro Viayra, 365 F.3d 790, 795 (9th Cir. 2004).

[2] The government also moved to strike defendant's supplemental brief as procedurally improper given that defendant did not request leave from the Court prior to filing it.  Supp. Opp. at 3-5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**        **'O'**

The Court held a hearing on April 4, 2022.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

Rule 29 provides that, after a jury returns a guilty verdict, a "court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c).  Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as they do in evaluating a challenge to the sufficiency of the evidence.  United States v. Ladum, 141 F.3d 1328, 1337 (9th Cir. 1998).  When considering a motion for judgment of acquittal, courts must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Hursh, 217 F.3d. 761, 767 (9th Cir. 2000).  This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution."  United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010).  "Second, . . . the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).  "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high."  United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010).  "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict."  United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201–02 (9th Cir. 2000).

## III.    DISCUSSION

Defendant moves for a judgment of acquittal on all counts.  Mot. at 5.  The government objects, arguing that the evidence amply supports the jury's verdict.  See Opp.  The Court addresses each count in turn.

### A. Counts One through Six: Distribution of a Controlled Substance

The government charged that, on six separate occasions, defendant distributed methamphetamine to Moore, Dean, Carlos Sinclair, Jermaine Gagnon, Cody Hoffman and Dane Brown, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  To prove these charges, the government was required to prove that: (1) defendant knowingly distributed methamphetamine to Moore, Dean, Sinclair, Gagnon, Hoffman and Brown; and (2) defendant knew that it was methamphetamine or some other federally controlled substance.  Jury Instruction No. 19; see Ninth Circuit Model Criminal Jury Instructions, No. 9.18 (2010 ed.).

---

Although defendant's supplement brief addresses many of the same issues addressed in defendant's original motion, the Court **DENIES** the government's motion to strike, as striking defendant's supplemental brief would be unduly prejudicial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL       'O'**

Defendant argues that "[t]he government has [] failed to offer evidence, beyond the testimony of drug addicts, that Mr. Buck distributed methamphetamine," and that "none of the videos or text messages between these alleged receivers and Mr. buck [sic] indicate beyond a reasonable doubt that Mr. Buck supplied drug [sic]." Mot. at 3.

At trial, the government adduced significant evidence adequate to support a rational fact finder to conclude, beyond a reasonable doubt, that defendant distributed methamphetamine on these six occasions. First, Sinclair, Gagnon, Hoffman and Brown all testified that defendant distributed methamphetamine to them on the dates in question. <u>See, e.g.</u>, Dkt. 244 (Tr. 7/14/21) at 31-32. In addition, the government produced substantial evidence corroborating this percipient witness testimony. For instance, the government called other witnesses, including Daniel Lyons and Corey Peters, who testified that, in their experience, defendant supplied the methamphetamine used during party and play sessions at his apartment. The government also introduced business records from Uber and Lyft, photographs, text messages and videos which showed that each of the men named in Counts Three through Six was in defendant's apartment on the dates in question. Similar evidence indicated that defendant regularly solicited men to engage in party and play sessions, and that defendant regularly used and distributed methamphetamine during those sessions. Finally, the government called Donald Schulze, who testified that he regularly sold methamphetamine to defendant from May 2018, to January 2019. This evidence is adequate for a rational trier of fact to convict defendant on Counts Three through Six. Defendant's attempt to impugn the credibility of the percipient witnesses as "drug addicts" fundamentally misunderstands Rule 29, which leaves credibility determinations to the jury, and calls for evidence to be viewed in the light most favorable to the prosecution. <u>United States v. Nevils</u>, 598 F.3d at 1164.

The government also introduced evidence adequate for a rational trier of fact to find that defendant distributed methamphetamine to Moore and Dean as alleged in Counts One and Two. As to Moore, videos recovered from defendant's computer depicted Moore using methamphetamine with defendant in defendant's apartment on various occasions. Text messages showed that defendant paid Moore to "slam," or inject, methamphetamine at defendant's apartment on several occasions. Dkt. 246 (Tr. 7/16/21) at 17-26. Furthermore, text messages indicated that defendant and Moore planned to inject methamphetamine once Moore arrived in Los Angeles, California from Texas. Dkt. 245 (Tr. 7/15/21) at 177-181.

The government also presented evidence from which a rational fact finder could conclude that Moore did not bring any methamphetamine to defendant's apartment on July 27, 2017, the date of Moore's death. For instance, Moore flew that day to Los Angeles, and thus had to pass through airport security, where presumably he would have been at an elevated risk of being apprehended for possession of methamphetamine. Furthermore, evidence suggested that Moore lacked the financial resources to purchase methamphetamine, and that, if he could have, he would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL        'O'**

not have needed to travel to Los Angeles to procure it from defendant.  And the evidence suggested that the car in which Moore was taken from the airport to defendant's apartment did not make any prolonged stops during which Moore could have purchased methamphetamine. Dkt. 245 (Tr. 7/15/21) at 184-186.  Finally, after Moore's death, methamphetamine and methamphetamine paraphernalia was found in defendant's red tool chest, but none was found in Moore's personal effects. Id. at 139-140, 161.  Based on this evidence, a rational fact finder could find, beyond a reasonable doubt, that defendant distributed methamphetamine to Moore.

Finally, turning to Dean, the government introduced evidence supporting the jury's conclusion that defendant distributed methamphetamine to Dean on January 7, 2019, as charged in Count Two.  For instance, Schulze testified that he provided 14 grams of methamphetamine to defendant on January 5, 2019, less than 36 hours before Dean's death.  Cell-site location records corroborated Schulze's account.  Furthermore, following Dean's death, drug paraphernalia was found in defendant's apartment, but not in Dean's effects.  Finally, the fact that a plastic bag containing additional drug paraphernalia, some of which contained Dean's DNA, was found outside defendant's window could reasonably be interpreted as evidence of consciousness of guilt.[3]

Accordingly, viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could find that defendant distributed methamphetamine as charged in Counts One through Six.

**B. Counts One and Two: Distribution Resulting in Death**

The government charged that not only did defendant distribute methamphetamine to Moore and to Dean, but that their deaths resulted from their use of the methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  Defendant's distribution of methamphetamine "resulted in" death if it was the "cause in fact of [Moore's and Dean's] death[s].  That is, the government was required to prove that, but for [the individual's] use of the distributed methamphetamine, he would not have died."  Jury Instruction Nos. 20, 21; see Burrage v. United States, 571 U.S. 204, 214, 218–19 (2014) (holding that the "death resulting" penalty enhancement under 21 U.S.C. §§ 841(a)(1), (b)(1)(C) required establishing "but for" causation).  The jury

---

[3] Los Angeles County Sheriff's Deputies recovered a small box in a white plastic bag from a ledge beneath defendant's window.  Inside the box were, among other things, several hypodermic syringes and glass bulbous pipes used to ingest methamphetamine.  The Court declined to suppress this evidence. Dkt. 124.  At trial, the government introduced DNA analysis that confirmed there was very strong support for the proposition that defendant and Dean were co-contributors to DNA obtained from several pipes, and for the proposition that Dean was a contributor to DNA obtained from a syringe.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL          'O'**

instructions clarify that a distribution "resulted in" death if the individual's "use of methamphetamine combined with other factors (including underlying disease) to produce death, and death would not have occurred without the incremental effect of the methamphetamine." Jury Instruction Nos. 20, 21.

As to Moore's death, defendant argues that no evidence supports the jury's conclusion that Moore's death was the result of his use of the methamphetamine distributed by defendant. Mot. at 2–3. Specifically, defendant argues that the evidence shows that "Gemmel Moore died of pulmonary edema brought on by complications HIV/AIDS [sic]." Id. at 2. Defendant points to the testimony of his medical expert, Dr. Marvin Pietruszka, who testified, without any corroborating evidence, that Moore's HIV had progressed to AIDS, and that the pulmonary edema caused his death. Defendant also contends that the testimony of Moore's mother, LaTisha Nixon, further corroborates that Moore died of complications from AIDS. Nixon testified that, when Moore last visited her in Texas, he "had a look," in her opinion, "like either cancer or AIDS." Dkt. 244 (Tr. 7/14/21) at 218. Nixon also testified that Moore experienced seizures. Id. at 217. Finally, defendant contends that the government's expert witness, medical examiner Kevin Young, "does not know much about diagnosing AIDS or complications from AIDS . . . ." Mot. at 3.

Similarly, in his supplemental brief, defendant contends that "the government's theory that the pulmonary edema resulting in Mr. Moore's death was caused by a methamphetamine overdose, rather than an infection related to HIV/AIDS, is [] based on mere speculation." Supp. Mot. at 7-8. Defendant adds that "there is insufficient evidence that the government met is burden of proving, beyond a reasonable doubt, that Mr. Moore would have lived but for the methamphetamine the government purports (without any direct evidence) was distributed by Mr. Buck." Id. at 8. Defendant contends that despite this lack of evidence, the jury returned a guilty verdict because it was "prejudiced by the psychological impact of the impermissible character evidence admitted in this case." Id.[4]

At trial, the government introduced substantial evidence adequate to allow the jury to rationally conclude that defendant's distribution of methamphetamine resulted in Moore's death. For instance, government witnesses testified that Moore had no underlying health conditions that could have independently resulted in his death; although he was HIV positive, the government presented expert opinions and documentary evidence to the effect that Moore's HIV had not progressed to AIDS, and that, in any event, he was not suffering from AIDS-related infections at

---

[4] To the extent defendant argues that "the jury convicted Mr. Buck of the charged crimes on the basis of extremely prejudicial and irrelevant character evidence," Supp. Mot. at 2, the Court finds that defendant's attempt to have the Court belatedly reconsider its rulings on motions in limine is inappropriate on a motion for judgment of acquittal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**       **'O'**

the time of his death.  Dkt. 246 (Tr. 7/16/21) at 93–96.  Furthermore, evidence established that the amount of methamphetamine in Moore's system at the time of his death was well above potentially fatal levels.  Id.

As to Dean's death, defendant argues that the evidence shows that Dean used methamphetamine before arriving at defendant's apartment.  Mot. at 3.  He further argues that Dean's death was not the result of his use of methamphetamine, but rather that "he died of advanced heart disease combined with the effects of alcohol intoxication."  Id.  Defendant again points to Pietruszka's testimony, as well as the testimony of a government witness, medical examiner Matthew Miller, in which he stated that the combination of ethanol toxicity and heart disease could result, in a hypothetical situation, in death.  Id.  (Miller added that this was not the case, however, in Dean's death.)

In his supplemental brief, defendant reiterates that the low-level of methamphetamine found in Mr. Dean's system . . . suggests that Mr. Buck did not distribute *any* methamphetamine to Mr. Dean."  Supp. Mot. at 5 (emphasis in original).  Defendant adds that "text messages from the night of Mr. Dean's death confirm that Mr. Buck told Mr. Dean not to come over that evening," but "Mr. Dean ignored his requests and appeared at his apartment."  Id.  Moreover, defendant reiterates that Mr. Dean suffered from severe coronary artery disease, chronic myocarditis, and hepatitis, and again points to Pietruszka's and Miller's testimony in support of the argument that "Mr. Dean's underlying condition of coronary artery disease was sever enough to be fatal by itself, and that, combined with the alcohol toxicity, at the very least may have been the proximate cause of death."  Id. at 6.  Defendant claims that, despite the lack of evidence that methamphetamine was the but-for cause of Dean's death, the jury found defendant guilty because it was "severely prejudiced by the psychological impact of the impermissible character evidence admitted in this case."  Id. at 6-7.[5]

At trial, one of the government's medical experts, Dr. Shaun Carstairs, testified that, although Dean suffered from heart disease, there was no indication that this caused his death.  Specifically, the coroners found no evidence of a blockage of Dean's arteries indicating a heart

---

[5] At oral argument, counsel for defendant noted that the evidence was so disturbing that the Court discussed offering counseling to the jury, and argued that the Court's discussion of counseling underscores that the prejudicial nature of the evidence presented at trial.  While counseling for the jury is sometimes provided where the evidence is disturbing, the fact that the evidence was disturbing does not mean that the evidence was *unfairly* prejudicial.  See United States v. Jahner, 72 F. App'x 665, 666 (9th Cir. 2003) (finding that district court did not abuse its discretion in allowing the jury to see numerous sexually explicit photographs, despite the fact that defendant was willing to stipulate to the contents of those photographs, because "the probative value of the[] images was not outweighed by their potential for unfair prejudice").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**       **'O'**

attack, nor did they find other signs of a stroke or pulmonary embolism.  Additionally, the amount of methamphetamine in Dean's system was well within the fatal range, while the level of alcohol in his system was nonfatal.

The evidence presented in the government's case-in-chief was adequate to support the jury's conclusion that Moore and Dean died as a result of defendant's distribution of methamphetamine.  Defendant's argument that Pietruszka's testimony contradicts the evidence presented by the government again ignores Rule 29's requirement that the Court view the evidence in the light most favorable to the prosecution.

Accordingly, the evidence was adequate to allow a rational trier of fact to find that defendant's distribution of methamphetamine resulted in the deaths of Moore and Dean, as charged in Counts One and Two.

### C. Count Seven: Maintaining a Drug-Involved Premises

The government charged that, from at least January 2011, to September 17, 2019, defendant knowingly leased, rented, used, and maintained a place, namely, his apartment, for the purpose of distributing and using controlled substances, in violation of 21 U.S.C. § 856(a)(1). The government was required to prove, among other things, that distributing or using controlled substances was one of the primary or principal uses to which the apartment was put.  Jury Instruction No. 22; see Ninth Circuit Model Criminal Jury Instructions, No. 9.31 (2010 ed.).

Defendant argues that no evidence introduced at trial supported the jury's verdict on Count Seven because the primary purpose to which defendant put his apartment was to use it as his residence.  Mot. at 4; see also Supp. Mot. at 9.  Defendant also argues that the testimony provided by Liam Sacks and Joshua Tedla, defendant's neighbors, is unpersuasive because those witnesses had never been inside defendant's apartment.  Id. at 3.  In his supplemental brief, defendant adds that defendant's apartment manager of twenty years stated, inter alia, that he never observed drugs, and that Buck was a good tenant.  Supp. Mot. at 9.

As a matter of law, defendant's argument fails because a conviction under 21 U.S.C. § 856(a)(1) does not require that the distribution or use of controlled substances be the sole purpose to which defendant's residence was put, but rather that it be "at least one of the primary or principal uses to which the [residence] is put."  United States v. Shetler, 665 F.3d 1150, 1162 (9th Cir. 2011) (quotation omitted).  And the government introduced ample evidence upon which the jury could reasonably have concluded that one of defendant's primary purposes in keeping his apartment was to distribute and use controlled substances.  For instance, numerous percipient witnesses testified that defendant distributed and used controlled substances in his apartment, thousands of videos recovered from defendant's computer depict defendant regularly distributing and using controlled substances, Schulze testified as to the regularity with which defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL        'O'**

purchased significant quantities of methamphetamine, and defendant's neighbors testified that they witnessed defendant receiving visitors at his apartment nearly daily, and that these visitors often left the apartment apparently under the influence.  See Dkt. 244 (Tr. 7/14/21) at 98; Dkt. 245 (Tr. 7/15/21) at 9.

Accordingly, the evidence was adequate to allow a rational trier of fact to find that defendant maintained a drug-involved premises as charged in Count Seven.

### D. Counts Eight and Nine: Inducement to Travel for Purposes of Prostitution

Finally, the government charged that defendant, on two separate occasions, persuaded, induced and enticed Moore and Gagnon to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2422(a).  Jury Instruction Nos. 23, 24; see Ninth Circuit Model Criminal Jury Instructions, No. 8.192 (2010 ed.).  In California, prostitution occurs when an individual willfully engages in sexual intercourse or a lewd act with someone else in exchange for money or other compensation.  Cal. Penal Code § 647(b).

As to Moore, defendant argues that defendant cannot be said to have induced Moore to travel to Los Angeles because Moore independently wanted to return to Los Angeles. Mot. at 4. According to defendant, the text messages between him and Moore establish this.  Id.  And as to Gagnon, defendant argues that Gagnon never testified that defendant said he wanted Gagnon to travel to Los Angeles for purposes of engaging in sexual activity, and that "drug use was the main activity in Mr. Buck's party and play sessions . . . ."  Id.  Furthermore, defendant argues that no evidence corroborates Gagnon's account of his phone calls with defendant.  Id. at 5.

As a matter of law, defendant can be convicted on Counts Eight and Nine even if Moore and Gagnon independently desired to travel to Los Angeles for reasons unrelated to prostitution. In fact, defendant can be convicted as long as he "convinced or influenced [them] to actually undergo the journey, or made the possibility more appealing."  United States v. Rashkovski, 301 F.3d 1133, 1136–37 (9th Cir. 2002) (holding that criminal liability under 18 U.S.C. § 2422(a) is based on defendant's intent, not victim's).  And the jury could reasonably have concluded that defendant persuaded, induced and enticed Moore and Gagnon to travel to Los Angeles because the evidence showed that defendant purchased their tickets for them—tickets that they otherwise could not have afforded.

Furthermore, defendant's argument that no evidence supported the conclusion that Moore and Gagnon engaged in prostitution upon arriving at defendant's apartment is also flawed because there is no requirement under 18 U.S.C. § 2422(a) that prostitution actually occur; rather, the requirement is simply that defendant intended for prostitution to occur.  Id. at 1137. Furthermore, the jury could reasonably have concluded that defendant's intent was for Moore and Gagnon to engage in sexual activity in exchange for narcotics or money, such as, for instance, the abundance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**      **'O'**

of evidence that Moore and Gagnon regularly engaged in sexual activity in exchange for narcotics or money at defendant's apartment.  This evidence included videos depicting party and play sessions, as well as text messages discussing these sessions.  Gagnon testified to this effect, and stated that he and defendant discussed party and play when discussing whether he would return to Los Angeles.  As noted above, several other witnesses testified to similar party and play sessions.

Accordingly, the evidence was adequate to allow a rational trier of fact to find that defendant persuaded, induced and enticed Moore and Gagnon to travel in interstate commerce to engage in prostitution, as charged in Counts Eight and Nine.

**IV.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** defendant's motion for acquittal.

IT IS SO ORDERED.

|  | 00 | : | 31 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |